HOMER PULLEN v. THE STATE.

No. 14981. Delivered February 24, 1932.

The opinion states the case.

*J. J. Collins* and *R. W. Fairchild,* both of Lufkin, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is attempt to poison; the punishment, confinement in the penitentiary for two years.

The injured party, J. S. Adams, was appellant's father-in-law. According to the version of the state, three or four years prior to the tranaction resulting in the indictment in the present case, appellant had endeavored to hire one Vestal Lout to kill the injured party. The testimony of the state was to the further effect that appellant had taken out an insurance policy on the life of his father-in-law in the sum of $6,000, $5,000 of which was payable to appellant and $1,000 to appellant's wife. The

injured party testified that he had no knowledge that this policy had been taken out by appellant. There was testimony from state's witnesses to the effect that appellant had paid the premiums on this insurance policy. Prior to becoming violently ill, the injured party had been suffering for several days with a cold. He had accompanied appellant in an automobile, at appellant's request, to a place near town. On the way to this place, according to the testimony of the injured party, appellant suggested that he had some cough medicine which had been very beneficial to him. Taking the bottle appellant offered him, the injured party swallowed about a tablespoonful of the medicine. It tasted bitter. Appellant also took a swallow of the medicine. As expressed by the witness, he thought appellant pretended that he took a swallow. After the journey with appellant had been concluded, the injured party went to his room in the hotel and retired. When he had gotten out of the car he had noticed that his limbs felt stiff and that his stomach was hurting. After having slept some time, great pain aroused him. His jaws were locked and he was in the throes of convulsions to such extent that he could not take medicine or water through the mouth. A doctor was called in and gave him some morphine. He was taken to the hospital where he was treated for lockjaw. His jaws had remained locked during the entire night. After being treated at the hospital, his condition improved and he was finally entirely relieved. The first physician who was called to wait on the injured party testified that he thought he had gotten some kind of a poison or that he had spinal meningitis. He said he did not know what was wrong. He testified that from the circumstances surrounding the case, there was doubt in his mind as to whether or not the injured party had been poisoned. Touching the symptoms of the injured party, he testified that if the jaws were contracted during the entire night it would indicate that he had the lockjaw. On the other hand, he said that in case of poisoning from strychnine, the patient relaxed after each convulsion. The physician who treated the injured party at the hospital testified that he diagnosed the case as tetanus, or lockjaw, and that after he treated the patient for this malady, he began to improve. He said that in his opinion, from the history he got of the case and the symptoms he observed, that the patient was not suffering from strychnine or other poisoning. A third physician testified, in answer to a hypothetical question propounded to him by appellant's counsel, that the injured party was suffering from tetanus. The contents of the stomach were not emptied and analyzed. No part of the cough syrup had been analyzed.

The injured party testified that after he left the hospital he went with appellant on one occasion to look for some cattle, and that appellant carried a piece of iron with him. He said that he believed appellant intended to kill him with the iron. He testified that on another occasion appellant had

a gun while in his presence and he thought that at that time appellant was preparing to kill him.

Appellant did not testify in his own behalf. He offered a witness whom Vestal Lout declared had been with him when appellant tried to hire him to kill the injured party. This witness denied that he knew appellant and said that he had never been present when appellant offered the witness money to kill the injured party. The witness Vestal Lout was shown to have a bad reputation for truth and veracity. Moreover, it was shown that he had frequently been indicted on felony charges.

The court charged on circumstantial evidence. Appellant contends that the evidence is insufficient. It is apparent that the state relied entirely upon circumstantial evidence to show that poison was contained in the medicine appellant offered the injured party. The circumstances relied upon were that the medicine was very bitter; that after taking the medicine the injured party became violently ill; that he manifested symptoms tending to show that he was suffering from the effect of poison. Notwithstanding the fact that a motive for the killing was established, it was incumbent upon the state to establish the fact that the crime was actually committed, that is, that on the occasion in question appellant gave poison to the injured party. The only doctor testifying that there were any symptoms that the condition of the injured party resulted from poison stated that there was a doubt in his mind as to whether he had been poisoned. The physician who treated the patient at the hospital expressed the opinion that he had lockjaw. The third physician, upon a hypothetical question propounded to him, stated that he entertained the opinion that the injured party had the lockjaw. The opinion is expressed that the demand of the law of circumstantial evidence to the effect that the circumstances must exclude every other reasonable hypothesis except that of the guilt of the accused was not met. Graves v. State, 119 Texas Crim. Rep., 68, 43 S. W. (2d) 953, and authorities cited. To warrant a conviction on circumstantial evidence, there must be proof to a degree of certainty greater than mere probability or strong suspicion tending to establish that the party charged was the person who committed the offense or was a participant in its commission. Graves v. State, supra. We quote from Wharton on Homicide (3rd Ed.), page 156, as follows:

"And while, in a prosecution for homicide by poison, the symptoms and appearances during the last illness become controlling facts in determining whether the death was from poison or from disease, the charge is not made out unless the prosecution negatives everything but poison as the cause of death; and this can only be done by showing affirmatively that the combined symptoms, and the absolutely certain facts with which they are associated, are inconsistent with any other disease or ailment." See Baker v. State, 112 Texas Crim. Rep., 254, 16 S. W. (2d) 248.

That the state failed to negative everything but poison as the cause of

the condition of the injured party is obvious. The facts and circumstances in evidence, in our opinion, do no more than to raise a mere probability or strong suspicion that appellant administered poison to his father-in-law. This is not enough.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.