## Lem Scoggins v. The State.

### No. 6873.  Decided October 18, 1922.

**1.—Theft of Cattle—Recognizance—Words and Phrases.**

The distinction between the requirements of Articles 903 and 919, C. C. P., are defined. in Ex Parte Cochran, 243 S. W. Rep., 465, and points out the difference as to appeal recognizance or bond in misdemeanor and felony cases. The recognizance in this appeal, having been entered into in open court, it was sufficient to recite that the charge was pending and conviction resulted in "this court," and binding the accused to appear in "this court" from day to day.

**2.—Same—Indentification—Insufficiency of the Evidence.**

Where, upon trial of theft of cattle, the conviction depended purely upon circumstantial evidence, and there was no proof of identification of the cattle when alive, in defendant's possession, etc., the conviction could not be sustained. Following Moore v. State, 237 S. W. Rep., 258, and other cases.

**3.—Evidence—Indentification—Book Entries Admissible.**

Where, upon trial of theft of cattle, the State, in an attempt to connect the hides alleged to have been from the stolen cattle, introduced many entries from the books of the packing company, which entries were shown to have been made in the usual course of business, but not always by the witness himself, though generally under his control and direction. This presented no reversible error.

Appeal from the District Court of Parker.  Tried below before the Hon. F. O. McKinsey.

Appeal from a conviction of theft of cattle; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Hood & Shadle,* and *Carter & Queen,* for appellant.

*R. G. Storey,* Assistant Attorney General. for the State.

HAWKINS, JUDGE.—Appellant was condemned to two years in the penitentiary upon conviction for theft of cattle from G. W. Cockburn.

The State has filed a motion to dismiss the appeal because, (1) the recognizance does not state the punishment, (2) because it does not state the court under whose jurisdiction appellant shall remain pending the appeal. *Ex parte* Cochrain, 92 Texas Crim. Rep., 297, settles first question adversely to the State's contention. In that opinion we undertook to show the distinction between the requirements of

Articles 903 and 919, C. C. P., as to appeal recognizance or bond in misdemeanor and felony cases. The recognizance having been entered into in open court it was sufficient to recite that the charge was pending and conviction resulted in "this court," and binding accused to appear before "this court from day to day, etc." In case of a recognizance no possible confusion could arise as to the court referred to.

Accused and Cockburn lived in the same neighborhood within two miles of each other. Conley, who was employed by appellant, testified that on a Sunday night early in October, 1920 appellant brought to his premises a reddish-brown steer, and the next morning directed witness to tie him down in the field; that on Monday or Tuesday four more yearlings came up the road and went into appellant's pasture. It is not shown that appellant was driving them or had anything to do with their presence on his premises. The four head consisted of one white jersey, one fawn, and two light-brown jerseys. On Tuesday night the five head were carried in a truck by appellant to Fort Worth and delivered at the stock yards to be sold through a commission firm. Four of the yearlings corresponded in a general way to four head of yearlings which belonged to Cockburn and which were missed by him on October 6th. The State undertook to trace the cattle sold by appellant, and show the identity of three of them as belonging to Cockburn by his identification of three hides examined by him some three months later in the packing plant of Armour & Company. The five head delivered at the stock yards by appellant were sold by his commission agent to Armour & Company, and went into what was designated as "Lot No. 27" consisting of twenty-seven head. These were killed on October 8th, and the hides therefrom were mingled with another lot of 61 hides from animals killed the same day, in all being eighty-eight hides. The record is silent as to the character of the other sixty-one hides. As we understand the evidence, hides were salted down in the "hide cellar" in the order the killings occurred and these eighty-eight hides went into what was designated as "Hide Pack 111" consisting altogether of 2535 hides. As shown by the books of Armour & Company "Hide Pack 111" was started September 30th and completed October 23d, 1920, and was made up of hides from all animals killed during this period. There was no way to identify hides packed on a particular date except to begin at the top of the pack and count down from the entries in the "Pack Book."

The latter part of December Armour & Company began taking "Hide Pack 111" up for shipment. Mr. Cockburn was present and on the second day he identified three hides as being from three of the animals lost by him. The fourth was not found. While his calves were small he had "nerved" them, which consisted of cutting each leg above the hoof, which left a scar when healed. He identified

the three hides by color and the presence of the scars. The record shows this "nerving" operation was practiced quite generally in Parker County. No check appears to have been kept on the hides removed prior to the time Cockburn claims to have found his. He says probably a thousand had been taken off, but there is nothing to show that. Checking from the "Pack Book," this would correspond to the number which would have to be removed before approximately reaching those packed on October 8th, among which the hides from Scoggins' cattle were supposed to be.

Appellant contends that this being a case purely of circumstantial evidence the State has not met the requirements of the law, and the conviction should not be permitted to stand. We believe he is correct. No witness identifies the cattle while alive in Scoggins' possession or after being sold by him as belonging to Cockburn. In order to warrant a conviction for theft where possession of recently stolen property is relied on, the property in possession of the party accused, or which had been in his possession, must be identified as that stolen. It is true this may be done by positive testimony or by proof of circumstances; when the later is resorted to it much measure up to that standard which the law requires. (See Branch's Ann. P. C., page 1342, Sec. 2482). The animals lost by Cockburn were not branded and had no ear marks. However, he identified by the most positive evidence three hides found by the color only and the scars upon legs of the hides. Conceding that these hides came from his cattle what does it prove? That cattle which had been stolen from him found their way into Armour & Company's packing plant some time between September 30th and October 23d, because the hides therefrom were found in the "Hide Pack" made between those dates inclusive. The evidence does not show that when the particular hides were found they were within five hundred hides of the twenty-seven, or eighty-eight even, which were from animals killed on October 8th, including the Scoggins cattle. It may be conceded that the evidence raises a suspicion of guilt against appellant, but this is not enough. The hides identified are not shown to have been from the cattle sold by Scroggins. Tollett v. State, 44 Texas, 95; Hogan v. State, 13 Texas Crim. App., 335; Wilson v. State, 100 S. W. Rep., 153; Moore v. State, 91 Texas Crim. Rep., 46, 237 S. W. Rep., 258. It lacks that degree of certainty required in circumstantial evidence which would justify this court in affirming the judgment.

In tracing the Scoggins cattle from the time they reached the stock yards to the "hide pack" in the packing plant in an attempt to connect the hides found with the Scoggins cattle many entries from the books of Armour & Company were introduced. These entries were shown to have been made in the usual course of business but not always by the witness himself though generally under his control and direction. Objection was on that ground interposed. Proof was

made that the bookkeepers were correct and accurate. On account of the multiplicity of transactions in such a business, participated in necessarily by may different employees it would obviously bealmost impossible and altogether impracticable to call to testify each witness to every small detail. In discussing a situation very similar, and stating it as one of the exceptions to the general rule, Mr. Wigmore in Vol. 2, page 1895, Sec. 1530, closes his observations in this language:

"The conclusion is, then, that where an entry is made by one person in the regular course of business, recording an oral or written report, made to him by one or more other persons in the regular course of business, of a transaction lying in the personal knowledge of the latter, there is no objection to receiving that entry under the present Exception, provided the practical inconvenience of producing on the stand the numerous persons thus concerned would in the particular case outweigh the probable utility of doing so. Why should not this conclusion be accepted by the courts? Such entries are dealt with in that way in the most important undertakings of mercantile and industrial life. They are the ultimate basis of calculation, investment, and general confidence in every business enterprise; nor does the practical impossibility of obtaining constantly and permanently the verification of every employee affect the trust that is given to such books. It would seem that expedients which the entire commerical world recognizes as safe could be sanctioned, and not discredited, by Courts of justice. When it is a mere question of whether provisional confidence can be placed in a certain class of statements, there cannot profitably and sensibly by one rule for the business world and another for the court-room. The merchant and the manufacturer must not be turned away remediless because methods in which the entire community place a just confidence are a little difficult to reconcile with technical judicial scruples on the part of the same persons who as attorneys have already employed and relied upon the same methods. In short, Courts must here cease to be pedantic and endeavor to be practical."

On account of disposing of the case on other grounds it may be unnecessary to decide the question here discussed, yet in view of another trial we think it not improper to intimate that we think the suggestions of Mr. Wigmore applicable to the instant case. We do not intend to intimate that any witness who could add verity to the entries should be dispensed with unless conditions make it impossible or impracticable to produce him, and this should appear from the record.

Other questions are presented but they relate to certain jurors and their probable bias which would not occur if another trial be had.

For the reason given the judgment is reversed and the cause remanded,

*Reversed and remanded.*