THURMAN WOOD V. THE STATE.

No. 21300. Delivered December 4, 1940.

The opinion states the case.

*B. L. Russell,* of Baird, and *Scarborough, Yates & Scarborough,* of Abilene, for appellant.

*J. R. Black,* District Attorney, of Abilene, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was assessed a penalty of two years in the penitentiary by a jury in Callahan County on a charge of cattle theft and he brings this appeal.

The only question presented for our consideration is whether or not the evidence is sufficient to warrant the verdict of the jury.

It is alleged that appellant did, on the 21st day of November, 1939, take from the possession of Fred Wylie one head of cattle without his consent and with intent then and there to appropriate the same to his own use and benefit. Numerous witnesses testified, but the question in the case arises upon the testimony of W. C. Cravey, to whom the State contends that appellant sold two stolen calves. The missing calves were found some months later on a ranch near Abilene and identified by the owner. Investigation showed with practical certainty the many transfers of these calves, tracing them back to a Mr. Morgan who purchased them with others in Cisco either at an auction sale or

privately on the same day. The record of the auction shows that Morgan purchased five yearlings from W. C. Cravey at auction on that date, but the calves in question were not identified as having been purchased in this manner. Neither could Morgan say whether he purchased them from Cravey or from another at private sale.

Cravey testified on behalf of the State that the accused came to his house while he was eating breakfast on the early morning of November 22nd and proposed to sell him two calves, one a heifer and the other a steer. He first wanted $40,00, but finally let them go for $35.00. He then asked Cravey to pay him a part in cash as he needed to use the money. This he did, giving him a $20.00 bill and $15.00 by check which was introduced in evidence and dated November 22. This check was not cashed, but the accused returned to Cravey's home some days later and asked for a duplicate check, stating that the first one had become soiled and he could not cash it. Mrs. Cravey, in the absence of her husband, gave him a duplicate check dated the same day and for the same amount and took up the original. The duplicate check was shown to have been paid on November 27 and endorsed by appellant.

When the two calves were found near Abilene they were taken in possession by the sheriff and carried to Baird, the county seat of Callahan County. Cravey was called there and, after viewing the calves, testified with reference to their identity that the steer calf was not the one which he purchased from appellant, but that the heifer calf was, "to the best of my judgment." The exact language as contained in the statement of facts was, in part, as follows:

"Q.—Is that the heifer calf that you bought from Woods, over there that day? A.—Well, to the best of my judgment—you see that was 4 or 5 months, to the best of my judgment that heifer calf looked very much like heifer calf I bought from Woods.

"Q.—Well, was it the calf. You know. You looked at it. A.— Well, yeah—

"The Court: He asked you if that was the calf you bought from the defendant. A.—To the best of judgment it was. You have all handled cattle. It is hard to identify things 4 or 5 months afterwards. Just to get up and be positive about it."

"A.—This heifer calf was very much like the calf I bought from Woods.

"Q.—What about the steer calf? A.—No, I don't thing it was. To the best of my judgment, I don't think it was, because—

"I bought two calves from Mr. Wood. That is right. The steer calf they showed me here, didn't look at all like the steer calf that Wood sold me. The heifer calf, I think, did look something like it.

"Q.—But you can't positively say that it was the calf? A.— Well, I just don't—it just looked like it a whole lot. That's all I could say. Was no mark or brand on it to where I could be positive about it, but it looked pretty much like the calf and it hadn't grown much; it was pretty near the same size."

"Q.—You are sure the steer was not the steer? A.—Well, I am just like it by the other one, I don't think it was. I am as much saying it was not as I am the other one that it is. In other words I am just as positive that the steer I saw was not the steer that I bought from Wood as I am that the heifer was the one I bought from him."

It will be noted that Mr. Cravey was not certain about the identity of the heifer calf and commented that it did not look large enough to be the one which he bought from Wood. Mr. Trigg, one of the parties who had purchased the two calves together and resold them, was called to identify it and he was not positive of the identity of the heifer calf because he thought it looked too large. Both were State witnesses.

It is contended by the State that the fact appellant introduced no evidence explaining the possession of the calves which he sold to Cravey should be taken as a circumstance against him. Inasmuch as Cravey didn't identify the calves which he purchased from Wood as being the ones now claimed by Wylie, we see no reason why appellant should do so. The prosecution is based on the theft of a head of cattle in the possession of Fred Wylie. Whether or not the calves properly belonged to Wood was not, in the state of the evidence, a matter of interest to this prosecution.

We consider Scoggins v. State, 244 S. W. 535 in point. It was followed by Smith v. State, 18 S. W. (2d) 1068 and also by Hampton v. State, 136 S. W. (2d) 820. We consider it a sound proposition of law that where the witness not aided by description or circumstance testifies that he has doubts about the identity of the stolen article, the jury would not be justified in so concluding beyond a reasonable doubt. Had he been able to give marks, brands or other evidence as facts upon which

the jury may have reached the conclusion that the heifer calf was the same one sold by appellant, the jury might have been able to so conclude even though the witness hesitated to do so. Here, however, the jury had to rely upon the witness' identification and this he declined to do with certainty.

Under the authorities stated, and because of the insufficiency of the evidence to warrant the jury's verdict, the judgment of the trial court is reversed and the case remanded.