## VALENTINE GUERRERA V. THE STATE.

### No. 21483. Delivered March 5, 1941.

The opinion states the case.

*Wade & Wade,* of Beeville, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The appeal is from a sentence of fifty years in the penitentiary for murder.

Appellant was indicted for the murder of his wife, Juanna Guerrera, on the 20th day of July, 1937, by choking her on and around her throat with his hands. The second count of the indictment alleges that he strangled her with his hands. This is the second appeal of the case, the former one being found reported in 136 Texas Crim. Rep., 411, 125 S. W. (2d) 595. That opinion, however, does not give a statement of the facts of the case and the questions before us at this time are different to the one upon which reversal was had.

Appellant and deceased were members of two Mexican families living near Charco in Goliad County, where it appears they had lived all of their lives. The deceased and appellant were the parents of two or three children and were expecting the birth of another in a short while. The two minor children were in the home with their mother at the time of her death, but were too young to give testimony in the case.

It is the contention of the State that appellant and his wife had previously consulted officers and others about domestic difficulties, but it also appears that each desired to live with the other if they could succeed in getting along. There is slight evidence of previous violent conduct of appellant towards his wife, but not of a serious nature. On the day of the death of his wife appellant had been at work. He came home near the close of the day and ate the supper which she had prepared, but there is no evidence of any conversation between them other than a brief statement by one to the other. As soon as appellant had finished eating he responded to the request of his father and went to help him and a brother change or fix some tires on some trucks or trailers. They were only a short distance from appellant's house. This is the statement of appellant and the only evidence in the case on the subject.

It further details that while they were working they heard a noise at the house (some said children screaming) and rushed to see what it was. They found the wife on the floor between the beds in a condition which they described as being a convulsion. In falling, or in some other way, they stated she had caused some lacerations which accounted for the bloody condition which she was in. Appellant and his brother went for a doctor, arriving at about 10 o'clock that night. Dr. E. R. Young, also a witness for the State, tells of the appellant coming to his house at that time and returning in the car with him to their home where they arrived at 11 o'clock. Upon his arrival he found the wife dead. He picked up her hand and found it warm and flexible, indicating to him that she had been dead some thirty minutes and probably a little longer. At the insistence of some of the parties present, and upon their statement that she had been murdered, he made only a slight examination, but advised that they get an officer.

Other doctors were called by parties interested and they were produced as witnesses by the State. From the evidence of Dr. W. F. Hinkle, who had died since the first trial and whose evidence was reproduced under the rule, we summarize the following facts: He found marks on the throat that looked like fingerprints. One arm had some marks about the wrist. In his judgment the cause of her death was strangulation. He felt pretty sure that she had been strangled to death. On cross-examination he said there was no autopsy made of the body and no test of the urine was made. On further cross-examination he concluded, "No, I could not say whether she was killed by a

lick on the back or not. Rigor mortis had set in and it would be hard to determine positively the exact cause of the death."

Dr. L. W. Chilton, Sr., another physician called, testified that he found the imprint of fingers on the throat and bruises on the shoulder and one on the back. He thought it was a human hand that caused the marks on her throat. Nothing else could have made the same imprint. He formed the opinion that she was strangulated—strangled to death. She could not have strangled herself to death. No autopsy was performed and no test of the urine made and he found no other evidence than strangulation as a cause of the death. He said, "Well, I feel pretty sure as far as I can go. I think I said to the jury that I could not say positively what caused her death without an autopsy, the same as at the last trial. I testified before, 'It is my belief that strangulation caused the death of Juanna Guerrera, but I do not know for sure,' and I still believe it. No, sir, I do not know for sure. I believe it firmly though. Yes, sir, I do not for sure; Yes, sir, that is right."

The sheriff, the constable, the justice of the peace and others testified, the most thorough evidence being given by the undertaker who examined her body. His description of the injuries did not vary materially from that given by others, but it is observed that no one gave any description of the injuries that would indicate their extent or seriousness. This witness reached the conclusion, as did the doctors, that in his opinion death was caused by strangulation. He formed that opinion at her house at the time he saw her. He believed that she was choked to death. He says if he had been ordered by the proper authority to take out her windpipe he would have been able to determine whether or not it was fractured or bruised in any way at all. "I could determine positively whether or not strangulation caused her death in that way." Further asserting on cross-examination that it was his opinion at all times that she had been choked to death, he said, "I would not swear that she had been strangled unless I had an autopsy."

No one testified to any condition of the room which indicated any struggle and there was nothing given to show that appellant had been involved in any struggle. The evidence is silent on these things and such silence is significant.

This is the strength of the State's testimony to prove the murder of appellant's wife. The witnesses had an opinion which

was merley an opinion in each case. It was within the power of the State to procure positive testimony by ordering an autopsy, which was not done. If skilled physicians and an experienced undertaker who was educated and trained in his profession, as the evidence shows, could not be certain about their conclusion without an autopsy, the State would be in no position to ask the jury to go further. Wood v. State, 145 S. W. (2d) 194.

Furthermore, there is no evidence connecting appellant with the murder, even if one is to be presumed, beyond slightly suspicious circumstances. He was her husband and they had difficulties, as others have. It would be an unfortunate conclusion if we should sustain a finding of his guilt under such facts.

As we view the case, the State has wholly failed to prove the corpus delicti, even had the jury been authorized to find from the evidence that she died from strangulation. An essential element is appellant's connection therewith. Baker v. State, 16 S. W. (2d) 248; Harris v. State, 28 Texas App. 308, 12 S. W. 1102; 19 Am. St. Rep. 837.

Many errors are complained of in this lengthy record, each of which has been ably treated in appellant's brief, but we do not believe the circumstances of the case warrant a discussion of them as it is altogether unlikely that they will arise again in this particular case.

Because the evidence is insufficient to show murder, and because it is insufficient to warrant a jury in finding appellant guilty, even if the proof of death by strangulation was sufficient, the judgment of the trial court is reversed and the cause remanded.