CLYDE BAKER v. THE STATE.

No. 12122. Delivered February 13, 1929.
Rehearing granted April 10, 1929.

The opinion states the case.

*Lon A. Brooks* of Abilene, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment confinement in the penitentiary for thirty years.

Appellant challenges the sufficiency of the evidence. Appellant was the wife of deceased. Omitting the formal parts, appellant's confession reads as follows:

"My name is Clyde Baker. I am 20 years old. I am the wife of Charlie Baker. On last Saturday May 21, 1927, I brought a small bottle of strychnine poison at B. Yates Drug Co. on the west side of the square. I paid 35 cts. for the bottle of poison. I told the man in the drug store I wanted it to kill rats with. I also bought some pills at this same time. It was a slender curley headed man I bought the articles from. I got a box from Bryant Link Store and fixed up this poison and pills and addressed the package containing the same to Charlie Baker 412 Davenport Street, Stamford, Texas. I enclosed a letter with the package and signed Charlie's mothers name to it, that is Pearl McTerrell. I wrote this letter in Mrs. Roy Smith's home. I was asleep Monday 23rd. when Charlie received this package, he later told me had taken some of it, that it was bitter and made water taste bitter. In a few minutes after this Charlie was in convulsions and later died. Charlie told me that he had let our baby taste of the stopper to the medicine."

In response to questions by appellant's counsel, the district attorney stated that he showed appellant the letter referred to in her written confession. An employee of Yates Drug Company testified, in substance, that before the death of deceased appellant bought a bottle of strychnine and some compound cathartic pills from him stating that she wanted to kill rats with it. The district attorney showed him the bottle and pills found in the home of deceased. Some of the strychnine was gone. The witness stated that the bottle presented to him had contained the strychnine sold appellant, and that the package of pills offered in evidence was similar to the package he had delivered to appellant. Appellant's employer testified that his wife took a package from their mail box which was addressed to Charlie Baker, the deceased, and that about an hour and a half later he found deceased in the yard in a dying condition. He stated that deceased was in convulsions and was vomiting; that with the help of a negro he carried deceased to his bed; that there was a bottle on the table in deceased's room, which contained a white powder and

near it a box of compound cathartic pills; that before he discovered deceased, appellant, who had been present, had gone to the hospital carrying her oldest child with her; that she made the remark that she was going to take the baby to the doctor, inasmuch as it was sick. The bottle of strychnine and package of compound cathartic pills found by appellant's employer in deceased's home were shown by the state to have been the same articles purchased by appellant at the drug store. A letter addressed to deceased was found in the home of appellant's employer on the shelf under his library table between some books. Appellant, who is a negress, was cooking for the family of her employer and had access to the house at all times. This letter, which was offered in evidence, reads as follows:

"Dear Son: How are you all this leaves us fine. Charlie I am sending you some medican ted told me you were sick I sure would like to see you all now you take your medican it is powered quinine love to ted and the babys Would write more but in a hurry. I am in Hillsboro now. Answer soon to your Mother Pearl McTerrell. All are well."

Appellant's employer found a piece of paper near the box of strychnine in appellant's home. It was addressed as follows: "Mr. Charlie Baker, 412 East Davenport St., Stamford, Texas." He testified that he thought it was the paper the package taken from his mail box had been wrapped in, as it carried the same address and was of the same color. Appellant offered no testimony.

We deem it unnecessary to further point out the many facts and circumstances independent of the confession which tend to show that deceased came to his death by an act of violence on the part of appellant. It is the announcement of the decisions that the evidence of death by violence independent of the confession need not be in itself conclusive, but that it may be supplemented or aided by the confession and made conclusive if accepted by the jury under proper charge as to proof of guilt beyond a reasonable doubt. Kugadt v. State, 38 Tex. Cr. Rep. 681; Aven v. State, 253 S. W. 521. Giving application here to the rule referred to, we are constrained to hold the evidence sufficient to establish the corpus delicti.

Bill of exception Number 2 deals with the action of the court in receiving in evidence the letter referred to in appellant's confession, it being appellant's contention, as shown by her objections, that a sufficient predicate had not been laid for the introduction of the letter and "That it had not been shown that appellant wrote said letter or had anything to do with the writing of same." The court

qualified the bill by stating that he gave a charge on circumstantial evidence. The district attorney had testified prior to the introduction of the letter that he showed the letter to appellant. Appellant admitted in her confession that she wrote the letter. We think a proper predicate had been established.

Bill of exception Number 3 is concerned with the action of the court in permitting the state to offer in evidence the strychnine, compound cathartic pills and paper bearing the address of deceased. The bill is qualified in the same manner as the foregoing bill. In our opinion a sufficient predicate was laid for the introduction in evidence of these articles.

Finding no error, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

There is no weakness in the State's proof to the point that the appellant procured strychnine, furnished it to the deceased and directed him to take it. The facts enumerated come from the confession of the appellant and other testimony in corroboration of the confession, all of which appear in the original opinion rendered in this case.

In his motion for rehearing counsel for the appellant urgently insists that in making proof that the death of the deceased was brought about by the administration of strychnine the State has failed to meet the measure which the law requires. The poison reached the deceased by mail. About an hour later, the deceased was heard screaming, and was found in his yard lying on the ground unconscious, in convulsions, vomiting and groaning. He was taken to his room. Warm water was given him which was followed by an increase in the vomiting. A doctor was called but before he arrived the death of the deceased occurred. Two doctors were present immediately after his death. The foregoing is all of the testimony touching the cause of the death of the deceased. Neither of the doctors who were present was called to testify. There was no autopsy held. There was no testimony showing the symptoms which would attend death by strychnine poison; nor was there testimony touching the quantity of strychnine taken by the deceased, if any, nor the amount necessary to produce death. It was urged by the appellant that symptoms such as vomiting and convulsions may at-

tend one sick unto death from natural causes, and that the burden was upon the State, in making proof of the corpus delicti, to show beyond a reasonable doubt that the death of the deceased was the result of strychnine poison.

From Wharton on Homicide, 3rd Ed., p. 156, the following quotation is taken:

"And while, in a prosecution for homicide by poison, the symptoms and appearances during the last illness become controlling facts in determining whether the death was from poison or from disease, the charge is not made out unless the prosecution negatives everything but poison as the cause of death; and this can only be done by showing affirmatively that the combined symptoms, and the absolutely certain facts with which they are associated, as inconsistent with any other disease or ailment."

From Wharton's Criminal Evidence, 10th Ed., Vol. 1, Sec. 328, we quote as follows:

"Where poison has been administered, death may result from natural causes, and the burden is on the prosecution to show beyond a reasonable doubt that the poison thus received into the system was the cause of death."

From the same text (Vol. 2, Sec. 787) the following quotation is taken:

"The disease of which the deceased died may not have been induced by poison, since there are few symptoms attendant on poisoning which are not also attendant on certain types of natural disease."

The symptoms attending strychnine poison are not within the judicial knowledge of the court, nor is the quantity of the drug that may be safely taken within such knowledge. We learn from the dictionary that strychnine is a very poisonous alkaloid obtained from various species of plants including nux vomica. Strychnine is used in medicine because of its powerful neurotic stimulant, and also for its tonic action on the heart. The State's case was not strengthened by its failure to use the available testimony touching the cause of death of the deceased. Such inference as arises from such failure is against the State. Two doctors were present immediately after the death of the deceased but for some undisclosed reason they were not called as witnesses for the State. Presumably these men, skilled in the science of medicine, could have supplied the testimony touching the cause of death of the deceased, upon which subject the jury was left without information except that stated above. The principle that as a part of the corpus delicti it is incumbent upon the State to show the cause of death is illustrated by many judicial de-

cisions. Among them are numerous cases decided by this court. The subject is discussed in the opinion of this court written by Presiding Judge White in the case of Harris v. State, 28 Tex. Crim. App. 308, 12 S. W. 1102, in which a woman was charged with the murder of her infant child. The court said:

"To warrant a conviction it was necessary for the State to prove that the child was born alive; * * * and that afterwards its life was destroyed by the act, agency, or procurement of its mother, this defendant. * * * Defendant confessed that the child was born; * * * that it was born alive; that she put it into Dr. Baldwin's spring while it was alive. The child was found the following Wednesday. * * * These (confessions), however, in and of themselves, are not sufficient. The corpus delicti consists not merely of an objective crime, but of the defendant's agency of the crime; and it is well settled that, unless the corpus delicti in both these respects is proved, a confession is not by itself enough to sustain a conviction. It must be corroborated. * * * Concede that the child had been born alive. Was it killed, or was it drowned? Evidently the doctor does not think it was killed by violence. As to the chances and probabilities that it had been drowned, he does not say one word. Why did not he make an examination, and give his opinion as to the fact of drowning? What evidence of drowning is there outside the confession? Was the child found in Dr. Baldwin's spring? If so, who found it there, and under what circumstances? Was, Dr. Baldwin's spring of sufficient depth to drown the child? Was the spring in a public or secluded place? All these facts might have been testified to, and yet the record contains no such evidence."

A more critical examination of the case of Kugadt v. State, 38 Tex. Crim. Rep. 681, and Aven v. State, 95 Tex. Crim. Rep. 155, to which we adverted in the original opinion, reveals the fact that in them there was testimony independent of the confession of the accused going to establish the cause of death. In Aven's case, the doctor testified touching the symptoms of arsenic poison which coincided with those attending the death of the deceased. An analysis of the stomach was made and arsenic in quantity such as to cause death was found therein. In fact, in that case the testimony touching the cause of death by poison was full and complete independent of the confession of the accused. In Kugadt's case, supra, and others cited on the subject in Aven's case, a like condition prevailed. In Aven's case, supra, it is said:

"It is not to be understood that the rule mentioned dispenses with the evidence of the death by volence independent of the confession,

but that it does not demand that such independent evidence be in itself conclusive, but that it may be supplemented or aided by the confession and made conclusive if accepted by the jury under proper charge as proof of guilt beyond a reasonable doubt."

In the present case, as above stated, the confession goes no further than to show that powdered strychnine and some pills were procured by the appellant and mailed to the deceased; that the deceased told the appellant he had taken some of the medicine and that it was of a bitter taste. It was the duty of the State to prove the cause of death, that is, that he died from strychnine poison. If such was the case, it was apparently within the power of the State to make the proof by the doctors who were present when the deceased died. The unexplained failure to use the doctors as witnesses leaves the proof of the cause of death of the deceased dependent almost wholly upon the confession of the accused. As said in substance by the court in the case of Harris v. State, supra, this court ought not to sanction a serious verdict and judgment on the confession of the accused, but the law would demand the introduction of evidence corroborative of the confession. In the present instance, the confession and the corroborative circumstances show the accused guilty of a serious crime—that of an attempt to poison. To show her guilty of murder, however, the proof must show that he took the poison and that death resulted from it, and on that subject the evidence, even of the confession, is inconclusive. There was testimony available to the State which it did not introduce and which apparently would be available to it upon another trial. We are constrained to conclude that the verdict should have been set aside in the trial court and that the motion for rehearing in this court should be granted, the affirmance set aside, the judgment of the trial court reversed and the cause remanded for another trial. It is so ordered.

*Reversed and remanded.*