Francisco Martinez GARCIA, Appellant,

v.

The STATE of Texas, Appellee.

No. 1095–92.

Court of Criminal Appeals of Texas, En Banc.

Sept. 22, 1993.

John G. Tatum, Dallas, for appellant.

John Vance, Dist. Atty., Donald G. Davis, Jason January, Scala Byers, and Mark Perez, Asst. Dist. Attys., Dallas, and Robert Huttash, State's Atty., Austin, for the State.

*OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

BAIRD, Judge.

A jury convicted appellant of murder, Tex.Penal Code Ann. § 19.02(a)(1), and assessed punishment at twenty years confinement. The Court of Appeals affirmed. *Garcia v. State*, 833 S.W.2d 564 (Tex.App.—Dallas 1992). We granted appellant's petition for discretionary review to determine whether an autopsy report is admissible un-

der Tex.R.Crim.Evid. 803(8)(B).[1] We will affirm.

## I.

### The Facts

Jeffery Barnard, acting chief medical examiner for Dallas County, testified he was the custodian of records for the Southwest Institute of Forensic Sciences.[2] Through Barnard's testimony, the State tendered an autopsy report prepared by a non-testifying deputy medical examiner.[3] Appellant objected, contending the report was inadmissible hearsay under Tex.R.Crim.Evid. 801(d) and 802. The trial judge overruled the objection and admitted the autopsy report into evidence.

The Court of Appeals affirmed, holding the autopsy report was a public record and, therefore, admissible under Tex.R.Crim. Evid. 803(8)(B), *and* as a business record under Tex.R.Crim.Evid. 803(6). *Garcia*, 833 S.W.2d at 568 (Tex.App.—Dallas 1992). We granted review to determine the correctness of this holding.

## II.

### Office of the Medical Examiner

#### A. Inquests

Tex.Code Crim.Proc.Ann. art. 49.25, § 1 requires any county with a population of

---

1. Appellant's ground for review states:

 The Court of Appeals erred in holding the trial court properly allowed the admission of the autopsy report as a public record and as a business record. The Court of Appeals has rendered a decision in direct conflict with the Corpus Christi Court of Appeals on the same matter which is an important question of state and federal law *and* it has been decided in conflict with applicable decisions of not only the Court of Criminal Appeals but, also with federal decisions. TEX.CRIM.PROC.CODE ANN. sec 200(C)(1), (2), (3) (Vernon 1991).

2. Though the record is less than clear, it appears that the Southwest Institute of Forensic Sciences has been designated by the Commissioners Court of Dallas County as the medical examiner of Dallas County. Tex.Code Crim.Proc.Ann. art. 49.25, § 1.

3. Dr. Barnard testified:

 State: Doctor, if you would, explain the procedure when in your office one of the other medical examiners actually performs the autopsy, how those findings and photographs are taken to the staff. How does that work?

 Barnard: Well, other than the fact that many times we're down in the autopsy area when the cases are performed, a conference is held on Thursday afternoons in which previous cases that have been autopsied are reviewed photographically.

 The autopsy is dictated by the person who does the autopsy and when that autopsy report is completed it is sent to each of us for our personal evaluation of the case, for our signature as to the cause, manner of death. And then after we sign it, it is sent on. If someone disagrees with the case, then their name is removed from the autopsy report.

 State: In this case you did sign off on the case as being consistent with your personal findings?

 Barnard: I agree with the findings, yes.

more than one million, without a medical school, to establish and maintain a medical examiner's office. The medical examiner is appointed by the commissioner's court and must be a licensed physician who, "to the greatest extent possible, ... shall ... hav[e] training and experience in pathology, toxicology, histology and other medico-legal sciences." Art. 49.25, § 2. The powers and duties relating to the investigation of deaths and inquests are vested in the office of the medical examiner. Art. 49.25 § 12.[4] Under Art. 49.25, § 6, the medical examiner has a duty to hold an inquest in the following cases:

1. When a person [dies] within twenty-four hours after admission to a hospital or institution or in prison or in jail;

2. When any person is killed; or from any cause dies an unnatural death, except under sentence of the law; or dies in the absence of one or more good witnesses;

3. When the body of a human being is found, and the circumstances of his death are unknown;

4. When the circumstances of the death of any person are such to lead to suspicion that he came to his death by unlawful means;

5. When any person commits suicide, or the circumstances of his death are such as to lead to suspicion that he committed suicide;

6. When a person dies without having been attended by a duly licensed and practicing physician ... and

7. When a person dies who has been attended immediately preceding his death by a duly licensed and practicing physician or physicians, and such physician or physicians are not certain as to the cause of death and are unable to certify with certainty the cause of death....

### B. Autopsies

Art. 49.01(1) provides:

4. Art. 49.01(2) provides:
"Inquest" means an investigation into the cause and circumstances of the death of a person, and a determination, made with or without a formal court hearing, as to whether

"Autopsy" means a postmortem examination of the body of a person, including X-rays and an examination of the internal organs and structures after dissection, to determine the cause of death or the nature of any pathological changes that may have contributed to the death.

If the cause of death can be established beyond a reasonable doubt without an autopsy, the medical examiner must file a report "setting forth specifically the cause of death." Art. 49.25, § 9. If the medical examiner is of the opinion that an autopsy is necessary, or if an autopsy is requested by the district attorney, an autopsy is performed to determine the cause of death. *Id.* Finally, Art. 49.25, § 11 requires that the medical examiner keep full and complete records, including the autopsy report, if any, and those records *"shall be public records."*[5] *Id.*

### III.

### The Hearsay Rule

■ Hearsay is defined as an oral or written "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(d). Rule 802 provides that "[h]earsay is not admissible except as provided by statute or these rules." Therefore, an autopsy report, prepared by a non-testifying deputy medical examiner, is hearsay and the question becomes whether such a report is admissible under one or more of the exceptions to the hearsay rule.

The State contends an autopsy report is a "public record or report" admissible under Rule 803(8)(B) which provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\* \* \* \* \* \*

(8) **Public records and reports.** Records, reports, statements, or data compilations, in any form, of public offices or agencies setting forth ... (B) matters ob-

the death was caused by an unlawful act or omission.

5. All emphasis is supplied unless otherwise indicated.

served pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, matters observed by police officers and other law enforcement personnel. . . .

As we stated in part II, the medical examiner's office is a public office or agency established by statute. Art. 49.25, § 1. Additionally, the medical examiner has a duty, imposed by Art. 49.25, §§ 6 and 9 to prepare and file a report, including autopsy reports, stating a cause of death and those reports are public records. Art. 49.25, § 11. Consequently, the admissibility of autopsy reports under Rule 803(8)(B) depends upon whether medical examiners are considered "other law enforcement personnel." We now turn to address that issue.

## IV.

### *Cole v. State*

In support of his contention that medical examiners are "other law enforcement personnel," appellant relies upon our opinion in *Cole v. State*, 839 S.W.2d 798 (Tex.Cr.App. 1992) (opinion on rehearing).[6] This case presents our first opportunity to interpret and apply that decision.

In *Cole*, the trial judge admitted reports prepared by a non-testifying Department of Public Safety (DPS) chemist. We were asked to determine whether the DPS chemist

was considered "other law enforcement personnel" under Rule 803(8)(B). To resolve that issue, we employed a two prong test: 1) whether the reports were objective, routine, scientific determinations of an unambiguous factual nature prepared by officials with no inherent motivation to distort the results, *Cole*, 839 S.W.2d at 808; and, 2) the adversarial context in which the relevant tests were conducted. *Id.*, 839 S.W.2d at 809.

Initially, we noted the reports were "remarkably subjective in nature as well as remarkably imprecise and subject to individual interpretation." *Id.* 839 S.W.2d at 809. We also mentioned the "Palmer Doctrine," which maintains that reports prepared in contemplation of litigation are inadmissible because they are inherently unreliable due to the maker's bias and motivation to make misrepresentations. *Id.*, 839 S.W.2d at 809, n. 9 (citing *Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943)).

In discussing the adversarial context, we found the DPS laboratory was "a uniquely litigious and prosecution-oriented environment." *Id.*, 839 S.W.2d at 809–810. Therefore, we concluded the DPS chemist was a member of other law enforcement personnel. Consequently, his report was *not* admissible under Rule 803(8)(B). Finally, we held that reports *not* admissible under 803(8)(B) may not be admitted under 803(6).[7] *Cole*, 839 S.W.2d at 811.

---

6. The Court of Appeals did not have the benefit of our opinion on rehearing in *Cole* when it delivered its opinion in this case. The courts of appeals are split on whether a medical examiner should be considered "other law enforcement personnel." *See, Cruz v. State*, 827 S.W.2d 83 (Tex.App.—Corpus Christi 1992) (Autopsy report is *inadmissible* because medical examiners are "law enforcement personnel."); *Martinez v. State*, 833 S.W.2d 188 (Tex.App.—Dallas 1992) (Medical examiners are *not* "law enforcement personnel."); *Sandles v. State*, 857 S.W.2d 932, (Tex.App.—Houston [1st Dist.] 1992) (Medical examiners are *not* "law enforcement personnel."); *and, Vasquez v. State*, 814 S.W.2d 773 (Tex.App.—Houston [14th Dist.] 1991) (Medical examiners are *not* "law enforcement personnel.").

The dissent cites *Aguilar v. State*, 850 S.W.2d 640 (Tex.App.—San Antonio 1993), however, that case does *not* involve an autopsy report. Dissenting opinion pg. 7, n. 12. Rather, Aguilar was charged with delivery of a controlled substance.

7. Tex.R.Crim.Evid. 803(6) provides an exception from the general rule of the inadmissibility of hearsay for "records of a regularly conducted activity." These records include:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. "Business" as used in this paragraph includes any and every kind of regular organized activity whether conducted for profit or not.

## V.

## Discussion

 To determine whether medical examiners are considered "other law enforcement personnel" under Rule 803(8)(B), we will employ the two prong test of *Cole*. First, we must consider whether autopsy reports are objective, routine, scientific determinations of an unambiguous factual nature prepared by officials with no inherent motivation to distort the results on the issue. Much of what a medical examiner observes and reports will be objective, routine, scientific determinations of an unambiguous nature. From these determinations, the medical examiner may draw conclusions which, to varying degrees, will be subjective. Therefore, reports prepared by a medical examiner may be both objective and subjective.[8] However, the fact that a report is partially subjective will not automatically render the report inadmissible under Rule 803(8)(B). There is no requirement the conclusion be purely objective. To so hold, would make most, if not all, scientific reports inadmissible.

The subjective degree of the report must also be considered in determining whether the report was prepared by an official with an inherent motive to distort its results. Unlike the dissent which would hold medical examiners have the primary responsibility to detect crime, dissenting opinion pg. 4, we believe a medical examiner's primary responsibility is to determine the cause of death. Therefore, medical examiners, as a general rule, are disinterested third parties who do not have an *inherent* motive to distort the results of their reports. A medical examiner is an official appointed by the commissioners court pursuant to Art. 49.25, § 1. The medical examiner is a licensed physician and usually has specialized training in medico-legal sciences. *Id.* at § 2. The medical examiner has a statutory duty to investigate *all* unexplained deaths, whether unlawful or not.[9] Art. 49.25, § 6. Autopsy reports are *not* necessarily prepared in contemplation of litigation. Although medical examiners occasionally participate in litigation, such participation is not the focus or purpose of the medical examiner's office. The medical examiner's duties involve the investigation of many deaths which are not the subject of a criminal prosecution.[10] Simply because a re-

---

8. Although we believe autopsy reports may be both objective and subjective, other courts disagree. In *State v. Damon*, 214 Conn. 146, 570 A.2d 700 (1990), the Connecticut Supreme Court held:

> ... An autopsy report derives from well recognized, routine procedures, and records objective facts. These procedures are performed hundreds of times each year, and in light of their frequency, are so generally considered reliable that they are normally undisputed. The pathologist performing the autopsy [in this case], had no motive to falsify her findings and owed no special allegiance to the state's attorney. [The pathologist] as a physician and a state employee, has a professional duty to report the results of her work in an accurate and truthful manner. Like a toxicology report, an autopsy report is essentially a factual report limited to objective, physical observations.

*Id.*, 570 A.2d at 707–708 (citations omitted). *See also, Manocchio v. Moran*, 919 F.2d 770, 776–777 (1st Cir.1990).

9. In his dissent, Judge Maloney contends that "a medical examiner is charged with only one, primary responsibility—detection of crime." Dissenting opinion pg. 3. Judge Maloney supports his conclusion by finding: 1) significance in the inclusion of the provisions establishing the medical examiner's office in the Code of Criminal Procedure; and, 2) that under Art. 49.25 § 6 the circumstances in which the medical examiner must conduct an inquest are all circumstances where "criminal activity may be afoot." Dissenting opinion pgs. 3–5. We disagree. One should not necessarily assume "criminal activity may be afoot" because: 1) a person died within 24 hours of admission to a hospital, Art. 49.25, § 1; 2) a person dies in the absence of one or more good witnesses, Art. 49.25, § 2; 3) a body is found and the circumstances of death are unknown, Art. 49.25, § 3; 4) a person died without having been attended by a physician and the local health officer does not know the cause of death, Art. 49.25, § 6; or 5) a person died and the attending physician is unable to certify a cause of death, Art. 49.25, § 7. After a simple reading of chapter 49 it is clear that the primary responsibility of the medical examiner is the determination of a cause of death in cases where the cause of death is unknown.

10. On cross-examination, Dr. Barnard testified:

> Appellant: Do you do—do you ever perform work for other than law enforcement agencies?
> Barnard: There are cases—I'm not trying to avoid your question. I'm trying to understand what you are asking. *We do cases which fit under the medical examiner's law.* Those cases, some are associated in that the police are involved in an investigation. *We really don't do any because the police ask us to.*

port prepared by a medical examiner *may* be used in the prosecution of a criminal case does not implicate the "Palmer Doctrine." Therefore, we find that even though autopsy reports are partially subjective, they are generally prepared by officials with no motive to fabricate the results of the reports.

We now address the second prong and consider the adversarial context in which autopsy reports are prepared. Art. 49.25, § 6 requires the medical examiner to file his report with the district or county attorney. However, the medical examiner's report is not filed until the cause of death has been determined and the report has been completed.[11] Consequently, the prosecution is not necessarily involved in the medical examiner's investigation or the preparation of the report.[12] In addition to having the statutory duty to investigate *all* unexplained deaths, the medical examiner has other statutorily defined duties relating to organ transplant donors, the removal of bodies, disinterment, cremation, and the keeping of records. *See* Art. 49.25, §§ 6a–12. Furthermore, we believe it is significant that the records kept by the medical examiner are designated "public records." *Id.*, § 11. For these reasons, we conclude a medical examiner's office is not, as a general rule, such a uniquely litigious and prosecution-oriented environment as to create an adversarial context. *Contra, Cole,* 839 S.W.2d at 809–810.

Therefore, we hold, as a general rule, medical examiners are not considered "other law enforcement personnel" under Rule 803(8)(B) as far as their duties relate to the preparation of autopsy reports.

The judgment of the Court of Appeals is affirmed.

CLINTON, OVERSTREET and MEYERS, JJ., concur in the result.

MALONEY, Judge, dissenting.

The majority holds that an autopsy report is admissible through the testimony of a medical examiner who did not prepare the report because (1) medical examiners generally do not have a motive to fabricate the results of such reports, and (2) the office of medical examiner is non-adversarial in nature. *Garcia v. State,* 868 S.W.2d 337, 341–342 (Tex.Crim.App.1993). I would hold that the subject autopsy report is inadmissible under Rule of Criminal Evidence 803(8)(B), as containing matters observed by other law enforcement personnel because (1) the prosecutorial worth of an autopsy report turns upon the highly subjective determination by the medical examiner as to cause of death and (2) the office of medical examiner is

---

Appellant: Let me ask it a different way. If a person were to come to you with something to be analyzed would you do it for an outside non-governmental agency?

Barnard: That wouldn't be in the medical examiner's section. If it was some sort of a substance—you would have to give me a specific example. There are multiple areas of the medical examiner's office. What your are suggesting does not involve the forensic pathologist or medical examiner. *We deal strictly with the cause and manner of death in cases.*

11. Again, Dr. Barnard testified:

Appellant: And that work is primarily turned over or is always turned over to the District Attorney's Office in cases that you come to the conclusion that it's a homicide; is that correct?

Barnard: *If they request it.* There are cases, for instance, someone is clearly murdered and it's not going to trial or for whatever reason, we don't turn anything over. Everything is kept in our office and *only at a request will something be mailed out.*

In other words, to answer your question, *we don't routinely take every homicide case and mail them to the District Attorney's Office.* It's only if that case is one which is under—I assume to be prosecuted *and they're requesting the information.*

12. In his dissenting opinion, Judge Maloney states:

"... Nevertheless, the medical examiner's determination of causation is based upon a synthesis of his *medical training and education,* his experience in the field, his examination of the body and its parts and *his knowledge of the facts surrounding the death,* in all probability supplied to the medical examiner by the police."

Dissenting opinion pg. 343–344 (emphasis in original).

While such may be true in some cases, there is no evidence in the instant case that the police provided any information to the medical examiner or that the medical examiner's had any relationship with the Dallas Police Department which might suggest a "uniquely litigious and prosecution-oriented environment."

inherently geared toward the investigation and detection of crime.

## I. *Causation*

Autopsy reports are utilized by the State in murder cases for the purpose of establishing causation, an element necessary to the imposition of criminal liability.[1] In the instant case, the indictment alleged that appellant did "cause the death of" the victim by shooting the victim with a firearm. Accordingly, the State had the burden of proving beyond a reasonable doubt that death was caused by the shooting of the victim with a firearm. This burden was met in part by the introduction of the autopsy report at issue, which concluded that the victim "died as the result of gunshot wounds of the chest" and that the manner of death was "homicide".[2]

Although a medical examiner's autopsy report undoubtedly contains a good deal of data which is relatively objective,[3] the piece of evidence the State is most likely interested in introducing through the report—cause of death—is without question a subjective determination.[4]

Determination of cause of death is comparable to diagnoses of illness, sometimes simple, but quite often subject to further question. In both cases, analysis is based upon certain known physical facts. Because medical diagnoses is subjectively fact bound, people often seek a second or even third medical opinion upon receiving an unfavorable diagnosis. In the case of an autopsy, the medical examiner is not confined in his analyses to observable outward symptoms; he is able to examine and also test vital organs. Nevertheless, the medical examiner's determination of causation is based upon a synthesis of his medical training and education, his experience in the field, his examination of the body and its parts and *his knowledge of the facts surrounding the death,* in all probability supplied to the medical examiner by the

1. Section 6.04 of the Penal Code provides that

 A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient. Tex.Penal Code Ann. § 6.04(a).

2. Medical Examiner, Jeffery Barnard, testified as to the cause of death, based upon the autopsy report. However, appellant does not here complain of the admissibility of Barnard's testimony, but rather of the admission of the report. As I explained in my concurring opinion in *Cole*, an expert witness may base his opinion upon facts or data not admissible in evidence. *Cole*, 839 S.W.2d at 814; Tex.R.Crim.Evid. 703. Therefore Barnard could testify as an expert concerning the cause of death and base his testimony upon the autopsy report, even if the report was not admissible in evidence. However, if the report is to be disclosed as the underlying basis for Barnard's opinion, it has to be disclosed for that limited purpose so that the trial court has the opportunity to conduct the balancing test set forth in Rule 705(d). Tex.R.Crim.Evid. 705(d) (facts or data underlying expert opinion shall be excluded if trial court determines the danger that they will be used for improper purpose outweighs their value as support for expert opinion).

3. For instance, the report at issue sets forth the weight of various organs of the victim and observable physical characteristics of the victim,

such as "white", "male" with "dark blond to brown hair" and weighing 212 pounds. I would note that the report at issue in *Cole* also probably contained objective material, in addition to the subjective determinations made therein. However, the inquiry should not be whether the subject document contains some objective data in addition to subjective determinations. Surely an exception to the confrontation clause of the Sixth Amendment deserves a better foundation than that suggested by the majority.

4. In *Cole*, we followed other courts in considering both the subjective nature of the report at issue and the adversarial context out of which the report arose. In examining the subjective nature of the report, we looked at the actual testing processes underlying the report's findings. *Cole*, 839 S.W.2d at 808–09. The majority now recognizes a new "test" in considering the subjective nature of the report, and cites *Cole* as its source. The majority now asks whether or not the person preparing the report possessed an "inherent motivation to distort the results". *Id.* 868 S.W.2d at 341–342. This was not part of the Court's consideration in *Cole*. While in *Cole* the Court recognized that consideration of the litigious context out of which a report arises is "mindful of" of the *Palmer* doctrine, we in no way placed a stamp of approval on that pre-rules doctrine. *Cole*, 839 S.W.2d at 809 n. 9 (in a footnote the court merely recognized the existence of pre-rules *Palmer* doctrine). The test espoused by the majority is derived from that doctrine, not from *Cole*.

police.[5] His conclusions derive from an analytical thought process involving certain judgment calls which may be subject to interpretation and human error. In my opinion such a determination is highly subjective.

## II. *Office of Medical Examiner*

The majority concludes that the office of medical examiner is not "as a general rule, [ ] a uniquely litigious and prosecution-oriented environment[,]" unlike the DPS laboratory at issue in *Cole.* In reaching this conclusion, the majority finds particularly significant that a medical examiner "has a statutory duty to investigate *all* unexplained deaths," not only those caused by criminal means. *Id.* 868 S.W.2d at 342. The majority further concludes that because the office of medical examiner has "other statutorily defined duties relating to organ transplant donors, the removal of bodies, disinterment, cremation, and the keeping of records", it is not prosecution-oriented. I disagree. A medical examiner is charged with only one, primary responsibility—detection of crime. The medical examiner is charged by statute to conduct "inquests" in certain prescribed circumstances. TEX.CODE CRIM.PROC.ANN. art. 49.-25. The term "inquest" is defined by article 49.01 as:

an investigation into the cause and circumstances of the death of a person, and a determination, made with or without a for-

mal court hearing, as to whether the death was *caused by an unlawful act or omission.*

TEX.CODE CRIM.PROC.ANN. art. 49.01(2) (emphasis added). The purposes of an "inquest" have been described as follows:

to obtain information as to whether death was caused by some criminal act, to obtain evidence in order to prevent the escape of the guilty, and to furnish the foundation for a criminal prosecution in case death is shown to be felonious.

44 TEX.JUR.3RD *Inquests* § 1 (1985). I challenge the majority to point to any *other* duty, unrelated to the duty to perform "inquests" with which the medical examiner is charged.[6] While true that some of the cases investigated by a medical examiner may be determined not to involve criminal activity, the statute's stated purpose for investigation is *in every case* to determine whether "the death was caused by an unlawful act or omission." TEX. CODE CRIM.PROC.ANN. art. 49.01(2); TEX.CODE CRIM.PROC.ANN. art. 49.25, sec. 6.[7]

Perusal of the list of deaths calling for an "inquest", that is, a "determination as to whether the death was caused by an unlawful act or omission", by a medical examiner reveals that these deaths all involve questionable circumstances in which it would be reasonable to suspect that criminal activity may

---

5. For example, in the Findings portion of the autopsy report at issue appears the statement "The deceased *reportedly* suffered multiple gunshot wounds to the trunk during an altercation." (emphasis added). There is no indication as to who reported such facts to the medical examiner, but the likely source is a police offense report or discussions with an officer.

6. In attempting to make its point that a medical examiner has duties that are not related to detection of crime, the majority emphasizes that a medical examiner is also charged with duties related to "organ transplant donors, the removal of bodies, disinterment, cremation, and the keeping of records." However, every one of these duties arises *only* in the course of a required inquest. *See* TEX.CODE CRIM.PROC.ANN. art. 49.25, sec. 6a(a) (describing medical examiner's duties when death occurs to organ donor *under circumstances requiring the medical examiner to conduct inquest*); TEX.CODE CRIM.PROC.ANN. art. 49.25, sec. 8 (providing that dead bodies shall not be disturbed without authorization of medical examin-

er *when death has occurred under circumstances requiring an inquest by the medical examiner*); TEX.CODE CRIM.PROC.ANN. art. 49.25, sec. 10 (describing medical examiner's authority regarding disinterment and cremation *in cases where an inquest is required by the medical examiner*); TEX.CODE CRIM.PROC.ANN. art. 49.25, sec. 11 (describing records which the medical examiner is required to keep regarding inquest investigations). Any other obligations the medical examiner may have arises only as a result of that endeavor.

7. It has been suggested that a medical examiner has no powers and duties beyond a determination that death was not caused by another person:

Because [ ] the question before the officer conducting the inquest is whether anyone is responsible for the death, if he finds that no one is responsible his function is at an end. He has no power to pass on any other question. 44 TEX.JUR.3RD § 3 (1985).

be afoot.[8] The fact that the prescribed circumstances are indicative of illegal foul play is also evidenced by the requirement that a person who becomes aware of a death under any of the prescribed circumstances report such death to *either* the medical examiner or to the police. TEX.CODE CRIM.PROC.ANN. art. 49.25, sec. 7. Further, *in every case* in which an autopsy has been performed, the medical examiner is required to file a report with the prosecuting attorney:

> Upon completion of the autopsy, the medical examiner shall file a report setting forth the findings in detail with the office of the district attorney or criminal district attorney of the county, or if there is no district attorney or criminal district attorney, with the county attorney of the county.

TEX.CODE CRIM.PROC.ANN. art. 49.25, sec. 9.[9] The role of medical examiner in the scheme of investigation and detection of crime renders that office "law enforcement personnel" for purposes of Rule of Criminal Evidence 803(8)(B).[10]

The majority's decision in this case appears on the surface to be rather nonthreatening. It is not likely here that cross-examination of the conducting medical examiner would have cast much uncertainty on the issue of causation. There is little doubt that the victim died of multiple gunshot wounds. However, causation is not always so appar-

---

8. Article 49.25, sec. 6 provides that the medical examiner shall in each of the following cases *determine whether death was caused by an unlawful act or omission:*
 1. When a person shall die within twenty-four hours after admission to a hospital or institution or in prison or in jail;
 2. When any person is killed; or from any cause dies an unnatural death, except under sentence of the law; or dies in the absence of one or more good witnesses;
 3. When the body of a human being is found and the circumstances of his death are unknown;
 4. When the circumstances of the death of any person are such as to lead to suspicion that he came to his death by unlawful means;
 5. When any person commits suicide, or the circumstances of his death are such as to lead to suspicion that he committed suicide;
 6. When a person dies without having been attended by a duly licensed and practicing physician, and the local health officer or registrar required to report the cause of death under Section 193.005, Health and Safety Code, does not know the cause of death. When the local health officer or registrar of vital statistics whose duty it is to certify the cause of death does not know the cause of death, he shall so notify the medical examiner of the county in which the death occurred and request an inquest; and
 7. When a person dies who has been attended immediately preceding his death by a duly licensed and practicing physician or physicians are not certain as to the cause of death and are unable to certify with certainty the cause of death as required by Section 193.004, Health and Safety Code. In case of such uncertainty the attending physician or physicians, or the superintendent or general manager of the hospital or institution in which the deceased shall have died, shall so report to the medical examiner of the county in which the death occurred, and request an inquest.

9. Barnard testified that autopsy reports were not delivered to the district attorney unless requested. While that may be the practice of the Dallas County Medical Examiner, such practice is in direct contravention of state law which requires that the medical examiner file all completed autopsy reports with the district attorney.

10. Following *Cole*, the Fourth Court of Appeals recently held that testimony referring to a drug analysis report "prepared by the Bexar County Forensic Science Center, previously known as the Medical Examiner's Regional Crime Lab" was inadmissible under Rule of Criminal Evidence 803(8)(b) when given by a toxicologist who did not prepare the report or conduct the tests. *Aguilar v. State*, 850 S.W.2d 640, 642 (Tex.App.—San Antonio 1993, pet. filed). Similarly, following our opinion on original submission in *Cole*, the Twelfth Court of Appeals held autopsy reports prepared by the county medical examiner are inadmissible when offered through a supervising examiner under Rule 803(8)(b). *Cruz v. State*, 827 S.W.2d 83 (Tex.App.—Corpus Christi 1992). Appropriately considering the adversarial context out of which autopsy reports arise, the court of appeals recognized:

 > County medical examiners[] who prepare reports evaluating the cause of death in anticipation of criminal litigation have continuing responsibilities and duties to law enforcement agencies. This continuing relationship between the law enforcement agency and the medical examiner is similar to that between the chemist and the law enforcement agency in *Cole*. The reports they produce fulfill the same function. Both parties routinely produce reports and analysis for law enforcement agencies essential to criminal prosecutions. These reports detail objective scientific facts, as well as subjective analysis relevant to criminal prosecutions.

 *Id.* at 85–86.

ent. In cases involving death by such alleged causes as poisoning, heart attack or asphyxiation, causation may be less than medically clear. *See, e.g., Edge v. State,* 144 Tex.Crim. 480, 164 S.W.2d 677, 679 (App. 1942) (judgment reversed where deceased's physician not permitted to testify that deceased did not die of strychnine poisoning, as alleged, but from heart attack induced by his use of narcotics and alcohol); *Reeves v. State,* 131 Tex.Crim. 560, 101 S.W.2d 245 (App. 1937) (evidence insufficient where State failed to prove death caused by wound inflicted by appellant, in light of evidence that death could have resulted from previously infected finger); *Baker v. State,* 112 Tex. Crim. 254, 16 S.W.2d 248 (App.1929) (State failed to meet burden of showing death caused by strychnine poisoning where decedent's symptoms were also consistent with those of death by natural causes); *see also Carney v. State,* 109 Tex.Crim. 624, 6 S.W.2d 369 (App.1928) (court erred in refusing defendant's requested charge that death resulted from decedent's father packing cobwebs in wounds, resulting in blood poisoning). Yet, the decision of the majority will allow admission of any autopsy report through the testimony of a nonconducting medical examiner who will not be subject to scrutiny on cross-examination concerning the details of the autopsy.

I would reverse the judgment of the Court of Appeals and remand the cause to the trial court for a new trial.