

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-14-00017-CR

---

SHANNON BLANE SESSUMS, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 6th District Court
Red River County, Texas
Trial Court No. CR02060

---

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

Initially charged with tampering with physical evidence, Shannon Blane Sessums was convicted by a Red River County jury for the lesser-included offense of attempted tampering with physical evidence. Sessums entered a plea of "true" to the enhancement paragraph, after which the jury, having heard additional evidence, set his punishment at eight years in prison.

On appeal, Sessums complains that there was insufficient evidence to support his conviction and that the trial court erred (for multiple reasons) in allowing the introduction of a report from the Texas Department of Criminal Justice (TDCJ) during the punishment phase of the trial. We find that the evidence was sufficient to support Sessums' conviction and that the trial court did not err in admitting the report. Therefore, we affirm the judgment of the trial court.

## I.    Background

On a blustery, late-August afternoon, Chief David Short and Officer Dustin Jule of the Bogata, Texas Police Department responded to a suspicious persons report on Main Street in Bogata. Upon arriving at the scene, they encountered Sessums and Chris Abbs in a bar ditch by the road. Due to some recent break-ins in the area, the officers considered their presence to raise some suspicions regarding them. While Jule was speaking with Abbs, Short observed Sessums crossing the street, away from them. Short requested that Sessums stop and wait for Jule to talk with him. Sessums complied with the request, and he began conversing with Short. After first obtaining permission, Short conducted a pat-down search of Sessums and, while doing so, found a screwdriver in one of his front pockets. Upon seeing the screwdriver, Jule started across the

2

street to assist Short because, they explained that a screwdriver can sometimes be used as a weapon. As Short continued the pat-down search, he felt an unidentified mass in the other front pocket and asked Sessums to empty his other pocket. Although Sessums initially hesitated, he removed a cellophane bag containing what the officers believed to be marihuana.

As Sessums removed the cellophane bag from his pocket, he backed away from the officers and began ripping the bag apart. Due to the strong wind, the contents of the bag and the remnants of the bag itself blew down the street in people's yards and anywhere the wind carried it. Sessums testified that although he requested the initial pat-down search to better insure the officers' safety, as soon as Sessums removed the bag and the officers saw what they believed to be marihuana inside it, a narcotics investigation began.

The officers grabbed both of Sessums' arms in an attempt to prevent him from destroying evidence, handcuffed him, and placed him in the patrol car. When asked by Short why he had ripped up the bag, Sessums responded, "I guess I was just trying to f*** with you, Chief." The officers then recovered a small remnant of the bag and a bit of the contents. Both Short and Jule testified that based on their training and experience and observing the appearance and smell of the contents that were recovered, it was their opinion that the bag had contained marihuana.

## II.    Sufficiency of Evidence

In his third point of error, Sessums contends that the evidence is legally insufficient to support the guilty verdict.

In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the trier of fact's verdict to determine whether any rational jury could have

3

found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the trier of fact "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a measure the courts call a "hypothetically correct jury charge." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

Here, Sessums was convicted of attempted tampering with physical evidence. A person commits the offense of tampering with physical evidence if he (1) although knowing that an investigation or official proceeding is pending or in progress, (2) alters, destroys, or conceals any record, document, or thing (3) with the intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding. TEX. PENAL CODE ANN. § 37.09(a)(1) (West Supp. 2014). A person commits an attempt if he (1) with specific intent to commit an offense, (2) did an act amounting to more than mere preparation that tends but fails to effect the

4

commission of the offense. TEX. PENAL CODE ANN. § 15.01(a) (West 2011). In order to convict Sessums of the crime with which he was charged, the State was required to prove beyond a reasonable doubt that Sessums took actions (which were more than mere preparation) by which he specifically intended to achieve the offense of tampering with physical evidence but failed to accomplish the intended act. On appeal, Sessums challenges only the sufficiency of the evidence to support that he knew that an investigation was pending or in progress at the time he attempted to destroy evidence.[1]

Sessums argues that the investigation began only after Sessums removed the cellophane bag from his pocket, relying principally on the officers' testimony that a "narcotics investigation" began when that action occurred. His argument emphasizes the officers' testimony that when they first saw Sessums, he was not doing anything illegal and that the pat-down search (resulting in the removal of the screwdriver) was permissive, not done at the order of Short. Sessums reasons that since he was only voluntarily complying with the requests of Short, no investigation was in progress until he removed the cellophane bag. Further, Sessums reasons that since the "narcotics investigation" began only when he removed the bag (whereupon he immediately shredded it), it would have been impossible for him to have known that an investigation had commenced in the instant before he began shredding the bag.

Sessums urges us to follow the reasoning of our sister court as expressed in *Pannell v. State*, 7 S.W.3d 222 (Tex. App.—Dallas 1999, pet. ref'd). In *Pannell*, the officer testified that he

---

[1]Sessums frames this issue as follows: "The issue presented here is whether Sessums knew that an investigation was pending or in progress at the time he attempted to alter or destroy the evidence."

5

had turned on his lights to pull Pannell over for speeding in a school zone. Before pulling over, Pannell stuck his hand out of the window and emptied the contents of a plastic bag. When the officer approached the vehicle after it stopped, he smelled a strong odor of marihuana. *Id.* at 223. Pannell was convicted of tampering with evidence. The Dallas Court of Appeals reversed Pannell's conviction, reasoning that the investigation began as a speeding violation and only progressed to a controlled substance investigation after the officer saw Pannell empty the contents of the bag. In that situation, the court held that Pannell could not have known a controlled substance investigation was pending or in progress at the time he destroyed or altered the marihuana. *Id.* at 224.

However, as Sessums acknowledges in his brief, the reasoning of *Pannell* has been criticized by the Texas Court of Criminal Appeals. *Williams v. State*, 270 S.W.3d 140, 143–44 (Tex. Crim. App. 2008). In *Williams*, an officer approached a car parked on the wrong side of the street in front of what was characterized as a known crack house. The peace officer saw Williams moving his hands around his waistband and suspected from that conduct that he might have a weapon. As the officer was performing a pat-down search, he heard an object hit the ground. When he looked, the officer recognized the object that he had heard fall as a crack pipe, this being only just before Williams stomped on the object and shattered it. *Id.* at 141–42. Williams' indictment alleged that he, "'knowing that an investigation was in progress, to-wit: checking [Williams] for weapons, [Williams] intentionally and knowingly destroy[ed] drug paraphernalia, to-wit: a crack pipe, with intent to impair its verity and availability as evidence in the investigation.'" *Id.* at 143.

6

On appeal, Williams challenged the sufficiency of the evidence that he had knowledge of the existence of an investigation in which the crack pipe would be evidence when he stomped on it since the investigation that was alleged in the indictment was a weapons investigation. The intermediate court of appeals, while accepting the reasoning in *Pannell*, upheld Williams' conviction nonetheless, reasoning that the thrust of the investigation had turned into a narcotics investigation when the pipe dropped to the ground. *Id.* The Texas Court of Criminal Appeals affirmed the judgment of the court of appeals, but not its reasoning, holding that the statute only requires that the defendant know that an investigation is in progress or pending and that he has the intent to destroy evidence. It neither requires that the defendant know what kind of investigation is in progress nor that he "will have evaluated and correctly assessed a thing's evidentiary status upon its destruction." *Id.* at 144. Rather, the statute reflects the investigatory reality and envisions a defendant "who intends for, but is not necessarily aware of, the impairment of something's role as evidence in the investigation." *Id.* In other words, all that is required to satisfy that prong of the attempt law is that the defendant knows that an investigation is in progress and that he intends to impair the use of evidence in the investigation. The title of the investigation in an indictment and the evidence destroyed need not match "as long as the [defendant] destroyed a thing with the intent to impair its availability as evidence in an investigation that he knows is in progress." *Id.* at 145.

In this case, we find there is sufficient evidence in the record for a reasonable jury to have found beyond a reasonable doubt that Sessums knew an investigation was progressing at the time he shredded the plastic bag. Sessums complied with Short's request to remain at the scene so

7

Jule could talk with him. After a short time, Sessums was asked to submit to a pat-down search.[2] The pat-down search yielded a screwdriver, which both officers testified could sometimes be used as a weapon. After finding the screwdriver, Chief Short continued the pat-down search and felt a large mass in another pocket. At about the same time, Jule crossed the street to assist Short. Upon noticing this mass, Short then asked Sessums to remove the contents of his pocket. It was only after Sessums had complied with four successively more intrusive requests by Short (each of which revealed information that led successively to the next request), that Sessums began to shred the baggie.

From this evidence, we find that a reasonable jury could find beyond a reasonable doubt that Sessums knew an investigation was progressing at the time that he attempted to destroy or alter the evidence. Therefore, we overrule this point of error.

## III. The TDJC Report

In his first and second points of error, Sessums alleges that the trial court erred in admitting a report during the punishment phase that had been sent by the TDCJ to the Bogata Police Department indicating that Sessums was a member of the Aryan Circle gang. In his first point of error, Sessums complains that the admission of the report violated his right to confront witnesses under the Sixth Amendment to the United States Constitution and his right to free association under the Constitution's First Amendment as both of these are applied to the states by the Fourteenth Amendment. *See* U.S. CONST. amends. I, VI, XIV. In his second point of

---

[2]Sessums neither challenges the validity of the initial stop and investigative detention by the officers nor the pat down by Short. Rather, Sessums acknowledges his cooperation with Short's requests.

error, Sessums complains that the trial court erred in admitting the TDCJ report (admitted as State's Exhibit 7)[3] since it did not fall within the business records exception to the hearsay exclusionary rule.

### A. Was State's Exhibit 7 Admissible Under a Hearsay Exception?

"We review a trial court's decision to admit or exclude evidence for abuse of discretion." *Lund v. State*, 366 S.W.3d 848, 852 (Tex. App.—Texarkana 2012, pet. ref'd) (citing *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002)). If the trial court's decision is within the zone of reasonable disagreement, it has not abused its discretion, and we defer to that decision. *Id.* (citing *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001)).

Sessums objected at trial to Exhibit 7, asserting it did not satisfy the business records exception to the hearsay rule exclusion. Further, both Sessums and the State in their briefs address only whether the document was admissible as a business record. However, it is not clear from the record whether the trial court admitted the document as a business record under Rule 803(6) or as a public record under Rule 803(8)(B). *See* TEX. R. EVID. 803(6), (8)(B).[4] If the document met either of these hearsay exceptions, then the court did not err in admitting it.[5]

---

[3]Hereafter referred to as Exhibit 7.

[4]Although the State formally offered the document as a business record, it both posited a basis to the trial court in a hearing without the jury and later laid a testimonial predicate that would qualify the document to be admitted as a public report under Rule 803(8)(B).

[5]The record indicates that the document was admitted after the hearing, without the jury, and before any testimonial predicate was laid. Any error in this regard was harmless, however, since the State subsequently elicited the necessary predicate testimony before the exhibit was discussed or published to the jury. In addition, it was published to the jury without objection.

Rule 803(8)(B) provides that the following are not excluded by the hearsay rule:

> **(8)    Public Records and Reports.**  Records, reports, statements, or data compilation, in any form, of public offices or agencies setting forth:
>
> . . . .
>
> (B)    matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding in criminal cases matters observed by police officers and other law enforcement personnel; . . .
>
> . . . .
>
> unless the sources of information or other circumstances indicate lack of trustworthiness.

TEX. R. EVID. 803(8)(B).

The Texas Government Code, among other things, places the following duty on the

TDCJ:

> (a)    On the release of an inmate determined by the department to be a member of a security threat group, the department shall notify the sheriff of the county to which the inmate is released and, if the inmate is released to a municipality, the chief of police for that municipality.  The notice must state the date on which the inmate was released and state that the inmate has been determined by the department to be a member of a security threat group.  The notice must be provided by e-mail or other electronic communication.

TEX. GOV'T CODE ANN. § 499.051(a) (West 2012).

Short testified that Exhibit 7 had been sent to his office by the TDCJ pursuant to its duty

under Section 499.051.[6]  Therefore, the document was admissible under Rule 803(8)(B) unless it

---

[6]The first page of the report is on TDCJ letterhead and sets forth information required by Section 499.051.  There are two additional pages that provide details regarding the Aryan Circle gang.  It is unclear whether these pages were also sent by the TDCJ.  Sessums claims in his brief to this Court that the pages originate from a private website

falls under the exclusion of matters observed by police officers or other law enforcement personnel that are subject to the hearsay rule. *See Brewer v. State*, No. 06-11-00164-CR, 2012 WL 626275, at *1 (Tex. App.—Texarkana Feb. 28, 2012, no pet.) (mem. op., not designated for publication).[7] We must determine whether the document reflects matters observed by law enforcement personnel and, if so, whether it is nevertheless admissible because it was in the nature of a ministerial act. *Id.* at *2; *Pondexter v. State*, 942 S.W.2d 577, 585 (Tex. Crim. App. 1996).

### 1.     Observation by Law Enforcement Personnel

On its face, the document purports to be sent from the TDCJ executive director (or on his behalf) to "Law Enforcement of BOGATA." This kind of notice is generated by the TDCJ upon the release of an inmate under its control when that inmate has been determined by the TDJC to be a member of a "security threat group," and it is an official notice of the TDCJ. In addition, it is sent to local law enforcement offices. There is little question that the document contains the observations of law enforcement personnel.

### 2.     Nature of the Document

Reports made by police officers and others investigating a crime have been held to be clearly outside the admissibility exception of Rule 803(8). *See, e.g.*, *Cole v. State*, 839 S.W.2d 798 (Tex. Crim. App. 1990). However, even though a document contains observations by law

---

unrelated to TDCJ. However, at trial Sessums objected to the entire document, but did not make a specific objection to the last two pages or request that they be excluded.

[7]Although this unpublished case has no precedential value, we may take guidance from it "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

enforcement personnel, it may nevertheless be admissible if it was "prepared in a nonadversarial setting, [is] unrelated to any specific litigation, and . . . record[s] objective, neutral observations." *Brewer*, 2012 WL 626275, at *2. Initially, we determine whether the document contains objective determinations of a factual nature prepared by personnel with no inherent motivation to distort the results. *See Garcia v. State*, 868 S.W.2d 337, 341 (Tex. Crim. App. 1993). The bulk of the first page of the report is boilerplate language, but the remainder contains objective facts, such as Sessums' name, date of birth, TDCJ and State Identification (SID) numbers, release date, and an identification of the gang to which he is reported to belong. There is nothing of a subjective nature in the report that would indicate any inherent motive to distort the facts. *See id.* As such, this is clearly objective in nature and merely recites an objective determination made by the TDCJ.

Documents of this nature have been held to be admissible as both public records and business records. *Segundo v. Texas*, 270 S.W.3d 79, 106–07 (Tex. Crim. App. 2008) (op. on reh'g). In *Segundo*, parole revocation documents were admitted at the punishment stage of trial. The documents contained statements that Segundo "'subsequently failed to fulfill the terms and conditions of said release, and is therefore not worthy of the trust and confidence placed therein,'" that he "'has violated the conditions of administrative release,'" and that he was an "'administrative release violator.'" *Id.* at 106. The Texas Court of Criminal Appeals held that such statements were "boilerplate" and admissible "both as public records and as business records." *Id.* at 106–07 (citation omitted).

12

We then consider the adversarial context in which the document was prepared. *Garcia*, 868 S.W.2d at 342. Here, the determination of gang membership was made pursuant to a statutorily imposed duty; consequently, it constitutes part of the ordinary duties of TDCJ personnel. In addition, it was made at a time when a prosecution was neither pending nor contemplated. Thus, it has none of the features of a subjective incident report made by law enforcement personnel or other persons conducting a factual investigation for use in a criminal proceeding. *Segundo*, 270 S.W.3d at 106–07.

Therefore, we find that the first page of Exhibit 7 was unquestionably admissible as a public record under Rule 803(8)(B). As previously noted, it is unclear whether the remaining two pages of Exhibit 7 also originated from the TDCJ. However, even should we assume that they were not admissible under that exception to the hearsay rule, we review the trial court's decision to admit evidence under an abuse of discretion standard. *Lund*, 366 S.W.3d at 852. When an exhibit contains both admissible and inadmissible evidence, the burden is on the objecting party to specifically point out which portion of the proffered evidence is inadmissible. *Whitaker v. State*, 286 S.W.3d 355, 369 (Tex. Crim. App. 2009); *Reyes v. State*, 314 S.W.3d 74, 78 (Tex. App.—San Antonio 2010, no pet.). A trial court does not abuse its discretion when it admits an exhibit in its entirety if the objecting party fails to segregate the admissible portion from that which is inadmissible. *Whitaker*, 286 S.W.3d at 369. As previously noted, Sessums objected to the entire document and did not limit his request to exclude only the last two pages. Because the first page is admissible, the trial court did not abuse its discretion by admitting the entire TDCJ document as evidence.

Therefore, we find that the trial court did not abuse its discretion in admitting Exhibit 7 under Rule 803(8)(B) and overrule this point of error.

**B.      Did Admitting Exhibit 7 Violate the Confrontation Clause?**

Since we have found that Exhibit 7 was admissible under Rule 803(8)(B), we must consider whether its admission violated Sessums' right to confrontation under the United States Constitutions' Sixth Amendment, his first point of error.

The Sixth Amendment provides that in all criminal prosecutions, the accused shall have the right to be confronted by the witnesses against him.  U.S. CONST. amend. VI.  The United States Supreme Court has held that this right applies to both in-court testimony and to out-of-court statements that are testimonial in nature.  *See, e.g.*, *Crawford v. Washington*, 541 U.S. 36 (2004).  Whether a particular out-of-court statement is testimonial is a question of law.  *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008).

Sessums argues that in considering this point of error, we should perform an analysis of the evidence to examine whether it bears "particularized guarantees of trustworthiness" to make it sufficiently reliable to satisfy the Confrontation Clause.  *Ohio v. Roberts*, 448 U.S. 56, 66 (1980).  However, under *Roberts*, that analysis is only appropriate if we do not find the evidence admissible under a firmly rooted hearsay exception that "'carr[ies] special guarantees of credibility' essentially equivalent to, or greater than, those produced by the Constitution's preference for cross-examined trial testimony."  *Lilly v. Virginia*, 527 U.S. 116, 126 (1999) (quoting *White v. State*, 502 U.S. 346, 356 (1992)).  In this case, we have found that Exhibit 7 was admissible as a public record or report.

14

Business and public records are generally admissible without confrontation "because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009). However, a business or public record may nevertheless be inadmissible if it is prepared for prosecutorial use or in anticipation that it will be used for prosecutorial purposes. In that case, the business or public record is considered testimonial and subject to a Confrontation Clause challenge. *Id.* It is the "intended or anticipated use of a statement that determines whether the statement is testimonial." *Grey v. State*, 299 S.W.3d 902, 909 (Tex. App.—Austin 2009, pet ref'd) (citing *Davis v. Washington*, 547 U.S. 813 (2006)).

In *Grey*, the appellant contended his confrontation rights were violated at the punishment stage when the trial court admitted his "pen pack"[8] that contained a history prepared by an unnamed department of corrections employee when he was admitted into prison in 1990. Included in the history was a summary of fifteen to nineteen prior arrests, adjudications, convictions, and probation revocations. Appellant contended that this history was testimonial and that its admission violated the United States Constitution's Confrontation Clause. *Grey*, 299 S.W.3d at 906. After discussing the United States Supreme Court's cases setting forth the test of what is testimonial for confrontation law purposes, the Austin Court of Appeals held the summary was admissible since it was clearly not prepared for prosecutorial use but, rather, for internal department purposes. *Id.* at 910; *see also Segundo*, 270 S.W.3d at 106–07 (holding

---

[8]Also called "pen packet." *See* TEX. CODE CRIM. PROC. ANN. art. 42.09 (West Supp. 2014).

statements in revocation documents regarding defendant's prior violations of terms and conditions of release were "nontestimonial" and not violative of Confrontation Clause).

As in *Grey*, Exhibit 7 was clearly not prepared for prosecutorial use. On its face, the document shows that it was prepared by the TDCJ May 2, 2011, over two years before Sessums was arrested. As we have discussed, it was prepared and sent pursuant to a statutory duty to be used by the Bogata Police Department as it saw fit. Thus, we conclude that Exhibit 7 was not testimonial and that its admission did not violate Sessums' right to confrontation. We overrule this point of error.

### C. Free Association Error Not Preserved

Sessums also complains for the first time on appeal that admitting the second and third pages of Exhibit 7 violated his right to free association, relying on *Dawson v. Delaware*, 503 U.S. 159 (1992). In *Dawson*, the United States Supreme Court held that it is a violation of a defendant's right of free association to admit evidence of gang membership and evidence of a gang's beliefs and propensity to violence when it is not relevant to the crime being prosecuted. *Id.* at 166–67. However, as pointed out by the court in *Dawson*, the defendant in that case consistently objected to the admission of the evidence on the ground that it violated his right of free association under the First Amendment. *Id.* at 162; *Dawson v. State*, 581 A.2d 1078, 1100 (Del. 1990). That argument at trial is contrasted with what occurred in this case; here, although he objected at trial on both hearsay and confrontation grounds, Sessums failed to object on free association grounds.

16

The purpose of requiring an objection at trial is to allow the trial court or opposing counsel to either correct any error or remove the offending documents. *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005). Further, an objection on hearsay will not preserve an error on free association grounds. *Cf. Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004). By failing to object to a free association violation, Sessums failed to preserve the issue. *See* TEX. R. APP. P. 33.1. We overrule this point of error.

## IV. Conclusion

We affirm the judgment of the trial court.


                                        Bailey C. Moseley
                                        Justice


Date Submitted:     September 18, 2014
Date Decided:       October 24, 2014

Do Not Publish

17