Eliseo ENRIQUEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–99–696–CR.

Court of Appeals of Texas, Corpus Christi.

Aug. 9, 2001.

Rehearing Overruled Oct. 4, 2001.

Charles A. Banker III, McAllen, for Appellant.

Theodore C. Hake, Asst. Crim. Dist. Atty., Edinburg, for State.

## OPINION

Opinion by Justice DORSEY.

A jury convicted appellant, Eliseo Enriquez, of intoxication manslaughter and intoxication assault. The jury assessed punishment at seventeen and eight years in prison to run concurrently. By two points of error appellant complains of the admission of evidence of his prior drug-related convictions and of his refusal to take a blood test. We hold that evidence of his three prior convictions were admitted in error and were harmful. We reverse and remand for a new trial.

## I. Analysis

By his first point of error appellant contends that the trial court erred in admitting evidence of his prior drug-related convictions at the guilt/innocence phase of the trial. The State contends the testimony was properly admitted to impeach the appellant's credibility although he did not testify. The state contends he testified indirectly through the lips of officer Eugenio Lopez through testimony elicited on cross examination of the officer. Accordingly, the state argues, the appellant's credibility was placed in issue and could be impeached with evidence of his prior convictions.

Officer Eugenio Lopez, the lead investigator in this case, was called by the state and testified on direct examination that while appellant was southbound on the outside lane of Texas Boulevard, appellant "cut over" towards the east side and hit two children, Jorge and Linda Macias. His vehicle kept going until it struck a pole. Later that day Linda died as a result of her injuries. After Lopez finished his investigation of the accident scene he went to the impoundment yard to check appellant's vehicle for damage. The only damage that he found to the vehicle was caused when it hit the pole. The evidence showed that Lopez went to the impoundment yard a second time. During this second visit photos were taken of the rear of appellant's car.

On cross-examination by appellant's counsel, Lopez testified that he spoke to appellant in the hospital. Defense counsel asked him:

Q. And why did you find it necessary to go back that same day like at 7:00 o'clock, more or less, that evening to go to where the car was impounded and take more pictures of the vehicle?

A. Because when I talked to Mr. Enriquez [appellant] at the hospital he gave me—or told me several stories as to what had caused him to have the accident. And I went back to make sure that I hadn't missed anything on the car.

Q. Missed anything like what?

A. Any damage.

Q. Any damage?

A. Yes.

Q. Why? Because—

A. Mr. Enriquez said that—he gave me three different stories when I talked to him as to what had happened as far as the accident. You want me to go through them or—

Q. Let me ask you, did he tell you that he had been hit from behind and that caused him to lose control?

A. No, ma'am, not from behind. He first told me that a car had passed him on the right side and struck his right front fender. And then he changed his story and he said that a car had passed him and suddenly braked in front of him and he had struck the car from behind. And then he changed his story again and said that all he remembers is that somebody passed him on the left side and he believed that there had been some contact between them. And he was saying this, that it happened when he was in San Juan. That's where the accident had happened. He was in San Juan when this accident happened. He didn't realize it was in Weslaco where the accident had happened.

Q. So that's what you remember right now as to what he said?

A. Yes.

A. And he was willing to talk to you; is that correct?

Q. Yes, ma'am.

Q. So, when you went back to the impound, if he said that the—the hits had

been from the sides, why did you take pictures of the back of the car?

A. To take out any doubt because usually—through my experience, when a car loses control like that to where they start weaving or whatever, it's when they are struck from behind and this causes the vehicle to lose control either—to the sides. That's just to, more or less, take out any doubt that he had been struck from behind or from any other side.

After Lopez finished his testimony the State's attorney told the trial court that defense counsel "went into oral hearsay statements" that were made by appellant. The State argued that because counsel admitted appellant's statements, Rule 806 of the Texas Rules of Evidence allowed the State to use any of appellant's prior felony convictions to attack his credibility as if he had testified. Additionally the State argued that the defense elicited appellant's hearsay statements in order to show that appellant's vehicle had been hit, which caused him to lose control of his vehicle. The State argued that because the defense elicited that testimony the State is allowed to attack it. The State wanted to use as impeachment evidence three prior convictions: a 1992 conviction for delivery of marihuana in an amount greater than five pounds but less than fifty pounds; a 1992 conviction for possession of marihuana in an amount greater than four ounces but less than five pounds; and a 1999 conviction of possession with intent to distribute 284 kilograms of marihuana.

Defense counsel argued that she did not ask Lopez if appellant had told him anything that made him go back to the impoundment yard; rather, she only asked him why he felt that he needed to go back to the yard to take more pictures of the car.

The trial court allowed the State to prove up all three final convictions. These judgments were admitted into evidence.

## II. Standard of Review

We review a trial court's evidentiary ruling for an abuse of discretion. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim.App.1997); *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1990). A trial court must be given wide latitude to admit or exclude evidence as it sees fit. *Theus v. State,* 845 S.W.2d 874, 881 (Tex. Crim.App.1992). As long as the trial court's evidentiary ruling was at least within the zone of reasonable disagreement an appellate court may not disturb it. *Montgomery,* 810 S.W.2d at 391; *Gaffney v. State,* 937 S.W.2d 540, 543 (Tex.App.— Texarkana 1996, no pet.).

## III. Rule 806

Rule 806 states in pertinent part: "When a hearsay statement, . . . has been admitted in evidence, the credibility of the declarant may be attacked, . . . by any evidence which would be admissible for those purposes if declarant had testified as a witness." Tex.R. Evid. 806. This rule applies to hearsay statements; therefore, to determine if Rule 806 allows the State to impeach appellant's credibility the initial inquiry is whether the statements are in fact hearsay. Hearsay is defined as an oral or written "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the *truth of the matter asserted.*" Tex.R. Evid. 801(d) (emphasis added); *Garcia v. State,* 868 S.W.2d 337, 339 (Tex. Crim.App.1993).

In the instant case defense counsel asked Officer Lopez (1) why he returned to the impoundment yard and took more pictures of the vehicle, and (2) if appellant had told him that he was hit

from behind. The context of these questions showed that counsel was trying to find out why Lopez returned to the impoundment yard in order to take photos of the back of appellant's vehicle. Lopez's answer contained out-of-court statements told to him by appellant about how the accident allegedly occurred. There is no indication that the statements were offered to prove the truth of the matter asserted. Rather, they were offered as an explanation of the officer's return to reinspect the car. They were not offered to prove that another vehicle did in fact cause appellant to lose control of his vehicle and hit the children.

Because the statements were not offered to prove the truth of the matter asserted they were not hearsay. *See* Tex.R. Evid. 801(d); *Garcia,* 868 S.W.2d at 339. The State's attack on the credibility of the appellant was wholly predicated on the statements being hearsay under Rule 806. Accordingly we hold that the trial court abused its discretion in admitting appellant's three prior convictions into evidence in order to impeach appellant's credibility.

## V. Prejudicial Effect

Rule 609 of the Texas Rules of Evidence states:

> (a) General Rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record but only if the crime was a felony or involved moral turpitude, regardless of punishment, *and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party.*

Tex.R. Evid. 609(a) (emphasis added). The probative value of evidence of the prior convictions must be balanced against their prejudicial effects.

Officer Lopez testified that appellant had told him three different stories about how the accident occurred: (1) that a car had passed him on the right side and struck his right front fender; (2) that a car had passed him and suddenly braked in front of him, causing him to strike the car from behind; and (3) that somebody passed him on the left side and that both cars contacted each other. These accounts of the accident are inconsistent and conflicting. Lopez also stated that appellant thought that the accident had occurred in San Juan when in fact it had occurred in Weslaco.

The rationale for the introduction of the unrelated extraneous offenses is to impeach appellant's testimony; their sole legitimate probative value is to show that appellant's story is not to be believed. Which story of appellant's is improbable? Even if appellant's statements through Officer Lopez could be considered hearsay, which they are not, the inconsistencies and conflicts in the statements themselves cast serious doubt upon appellant's credibility about how the accident occurred. The State did not need to introduce evidence of the three prior convictions in order to impeach appellant's credibility. Those convictions lacked any probative value as to whether appellant's story should be believed or not.

The prior convictions were inherently prejudicial because they revealed appellant's criminal history to the jury which allowed them to consider this evidence during deliberations at the guilt/innocence phase. Accordingly the prejudicial effect of this evidence to appellant greatly outweighed its probative value. We hold that the trial court abused its discretion in allowing the State to introduce evidence of the convictions.

## IV. Harm Analysis

■ The issue is whether the error in admitting the evidence of appellant's prior convictions affected a substantial right. *See* Tex.R.App. P. 44.2(b); *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1998). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *King,* 953 S.W.2d at 271. We will not reverse if, "after examining the record as a whole, [we have] fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998). If the reviewing court is unsure whether the error affected the outcome the court should treat the error as harmful; *i.e.,* as having a substantial and injurious effect or influence in determining the jury's verdict. *O'Neal v. McAninch,* 513 U.S. 432, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).

■ We cannot say that the record as a whole assures us that the admission of the three prior drug-related convictions did not influence the jury and that appellant would have been convicted without them. Evidence of these convictions was inflammatory because they portrayed appellant as a drug dealer in a region where narcotics trafficking is a serious problem. Further the court of criminal appeals has "consistently acknowledged that the introduction of extraneous offenses to the jury is inherently 'prejudicial,' " because "of the jury's natural inclination to infer guilt to the charged offense from the extraneous offenses." *Abdnor v. State,* 871 S.W.2d 726, 738 (Tex.Crim.App.1994). We believe that the erroneous admission of the prior convictions had the same effect on the jury. Applying the harm analysis required in Rule 44.2(b), then, we do not have fair assurance that the trial court's error in admitting this evidence had no, or but a slight, effect on the jury's finding of guilt. *See* Tex.R.App. P. 44.2(b). We sustain point one and reverse and remand for a new trial.

## VI. Blood Test

■ By point two appellant complains that the trial court erred in admitting evidence of his refusal to take a blood test in the absence of proper statutory warnings. The admission or exclusion of evidence is within the trial court's discretion. *See Jackson v. State,* 575 S.W.2d 567, 570 (Tex.Crim.App.1979). An abuse of discretion is a decision that is so clearly wrong that it lies outside the zone within which reasonable persons might disagree. *See Montgomery,* 810 S.W.2d at 391.

Section 724.015 of the Texas Transportation Code requires that certain warnings be given to a person prior to "requesting a person to submit to the taking of a specimen." Tex. Transp. Code Ann. § 724.015 (Vernon 1999). However section 724.015 does not require that such warnings be administered prior to compulsory extractions of breath or blood samples under section 724.012(b).[2] *See id.;* Tex. Transp. Code Ann. § 724.012(b) (Vernon 1999). In

---

2. Section 724.012(b) provides:

(b) a peace officer shall require the taking of a specimen of the person's breath or blood if:

(1) the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle or a watercraft;

(2) the person was the operator of a motor vehicle or a watercraft involved in an accident that the officer reasonably believes occurred as a result of the offense;

(3) at the time of the arrest the officer reasonably believes that a person has died or will die as a direct result of the accident; and

light of the fact that the requirements of section 724.012(b)(1), (2), (3), and (4) were satisfied, and that a blood sample could, at that point be compelled, a requirement that appellant be admonished as the statute requires would be surplus.

 Moreover the State contends appellant's refusal to submit to a blood test was properly admitted for the purpose of laying the appropriate predicate about why the officer required appellant to provide a specimen despite his refusal to do so. *See* TEX. TRANSP. CODE ANN. § 724.012(b)(4) (Vernon 1999); *see also Stidman v. State*, 981 S.W.2d 227, 229 (Tex.App.—Houston [1st Dist.] 1998, no pet.) (officer met requirements of section 724.012(b) before requiring appellant to provide a sample).

Here Officer Juan Hernandez testified he was required to take a blood sample from appellant because appellant was under arrest for intoxication assault, the victims involved were in critical condition at that time, and appellant refused to voluntarily provide a blood sample. Therefore because appellant's refusal to provide a blood sample was a necessary element that needed to be established in order to render the blood specimen results admissible under section 724.012, it was not error for the trial court to admit appellant's refusal into evidence.

Accordingly the trial court did not abuse its discretion in admitting appellant's refusal to provide blood samples into evidence, despite the failure of the police officers to administer the statutory warnings. We overrule point two.

We REVERSE the judgment and REMAND the case for a new trial.

Dissenting and Concurring Opinion by Justice RODRIGUEZ.

(4) the person refuses the officer's request to submit to the taking of a specimen voluntarily.

RODRIGUEZ, Justice, dissenting and concurring.

Enriquez contends that the trial court erred in admitting evidence of his prior drug-related convictions. I would find the trial court did not abuse its discretion in admitting the evidence. Accordingly, I would uphold the trial court's decision to allow the State to impeach appellant with his three prior convictions.

During cross-examination by defense counsel, Officer Lopez testified, without objection, regarding appellant's out-of-court statements. After these statements were elicited, the State moved to impeach appellant's credibility pursuant to rule 806 of the Texas Rules of Evidence. Rule 806 provides, in relevant part, "[w]hen a hearsay statement ... has been admitted into evidence, the credibility of the declarant may be attacked, and if attacked may be supported by any evidence which would be admissible for those purposes if declarant had testified as a witness." TEX.R. EVID. 806. The court heard argument outside the presence of the jury regarding the admission of appellant's prior drug-related convictions for the purpose of impeachment. After considering the question of admissibility and whether the prejudicial effect of admitting the evidence outweighed its probative value, the trial court allowed the introduction of appellant's three prior convictions. The court instructed the jury to consider the convictions for impeachment purposes only.

Appellant appears to argue that rule 806 does not apply because his statements were introduced by a State's witness. Appellant attempts to distinguish *Appling v.*

TEX. TRANSP. CODE ANN. § 724.012(b) (Vernon 1999).

*State,* 904 S.W.2d 912, 916 (Tex.App.— Corpus Christi 1995, pet. ref'd), wherein this Court held that the State was entitled to attack appellant's credibility as if the appellant had testified when the hearsay statement was admitted through appellant's own witnesses. *See id.* The State contends, however, that neither *Appling* nor the language of rule 806 limits the admission of a declarant's hearsay statement in this manner. I agree.

In the present case, accepting each party's assertion that the testimony at issue is hearsay,[2] appellant opened the door to the issue of his credibility during his own cross-examination of a State's witness.[3] It is arguable that the statements were brought forward in an attempt to demonstrate how the accident happened, or that there may have been another cause for the accident other than appellant's intoxication. Thus, I would conclude, when appellant's statements were elicited from the State's witness on cross-examination, the State was entitled to attack appellant's credibility with any evidence which would be admissible for those purposes, as if appellant had testified as a witness. *See id.* at 916–17 (citing *Davis v. State,* 791 S.W.2d 308, 310 (Tex.App.—Corpus Christi 1990, pet. ref'd)); *see also* TEX.R. EVID. 806.

Appellant further argues that the convictions did not legitimately relate to appropriate impeachment and were inflammatory. The State contends that the trial court properly determined that the probative value of the prior convictions for impeachment purposes outweighed any prejudicial effect. Generally, a witness may be impeached by evidence of a prior felony conviction or a conviction involving moral turpitude once the trial court decides that the probative value of the conviction outweighs its prejudicial effect. *See* TEX.R. EVID. 609; *Theus v. State,* 845 S.W.2d 874, 879 (Tex.Crim.App.1992). Appellant's prior drug-related offenses are felony convictions. *See* 21 U.S.C. § 841 (2001); TEX. HEALTH & SAFETY CODE ANN. §§ 481.120(b)(4) & 481.121(b)(3) (Vernon Supp.2001). Therefore, I would conclude these convictions are admissible for impeachment purposes and should have been admitted if their probative value outweighs the prejudicial effect. *See Theus,* 845 S.W.2d at 879.

When weighing the probative value of a conviction against its prejudicial value, the court examines, among other factors: (1) the impeachment value of the prior crime; (2) the temporal proximity of the past crime relative to the charged offense and the witness's subsequent history; (3) the similarity between the past crime and the offense being prosecuted; (4) the importance of the defendant's testimony; and (5) the importance of the credibility issue. *See id.* In reviewing the trial court's conduct in weighing these factors, and its decision in admitting evidence of prior convictions, the trial court must be accorded wide discretion and should be reversed only upon a clear abuse of discretion. *See id.* at 881 (citation omitted). However, if the trial court's decision to admit prior

---

**2.** Appellant did not at the trial level, and does not now on appeal, challenge the "hearsay" characterization of the statement. Because the issue is not briefed, I would not discuss it on appeal. *See* TEX.R.APP. P. 38.1(h).

**3.** Appellant emphasizes, on appeal, that the officer asked questions of the defendant in the hospital after *Miranda* warnings were given.

He also notes that answers given by the officer to defense counsel's questioning on cross-examination were non-responsive. However, appellant does not provide record citations and the record does not establish that those issues and/or objections were raised in the trial court. Therefore, they have not been preserved for review. *See* TEX R.APP. P. 33.1.

convictions lies outside the "zone of reasonable disagreement," an appellate court should not hesitate to reverse its determination. *Id.* (citation omitted).

Looking to the *Theus* factors, crimes involving deception have a higher impeachment value than crimes that involve violence. *See id.* Appellant contends that convictions for possession and delivery of marijuana are not crimes of deception and have no great impeaching value. The State argues that, although the crimes do not involve deception or violence directly, they tend to lean more toward deception and moral turpitude rather than violence. "Moral turpitude" has been defined as the quality of a crime involving grave infringement of the moral sentiment of the community. *See (Hardeman v. State,* 868 S.W.2d 404, 405 (Tex.App.—Austin 1993), pet. dism'd as improvidently granted, 891 S.W.2d 960 (Tex.Crim.App.1995)). Drug offenses, specifically the delivery of marijuana, involve "a grave infringement of moral sentiment of the community" and thus would arguably be crimes of moral turpitude. *Cf. In the Matter of Lock,* No. 99–0976, 2001 Tex. LEXIS 70, at * 7–8 (Tex.Jan.17, 2001) (in context of attorney discipline, elements of possession of controlled substance, *without the intent to distribute or sell,* do not satisfy definition of moral turpitude) (publication pending). Although not rising to the level of deception, the crimes involved in this case are much higher in impeachment value than crimes involving violence. Therefore, I would conclude the first factor weighs in favor of admission.

Second, the temporal proximity of appellant's offenses relative to the current offenses was within the ten-year limit set by rule 609. *See* Tex.R. Evid. 609. Appellant concedes that the convictions, which occurred between approximately seven years and four months of the State offering the convictions to impeach appellant's credibility, favor admission.

Third, appellant's prior convictions were for possession of, delivery of, and intent to deliver marijuana. The State contends that the prior crimes of drug possession and distribution are clearly dissimilar to the current crimes of manslaughter and assault. It is arguable, however, that appellant's prior convictions are similar to the present offenses of intoxication manslaughter and intoxication assault in that they all involve intoxicating substances. *See* 21 U.S.C. § 841 (2001); Tex. Pen.Code Ann. §§ 49.07 & 49.08 (Vernon Supp.2001); Tex. Health & Safety Code Ann. §§ 481.120(b)(4) & 481.121(b)(3) (Vernon Supp.2001). This is particularly significant in this case because the charge allowed the jury to find that appellant was intoxicated if he did not have "the normal use of his mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body . . . ." Nonetheless, even if the similarity factor were to weigh against the admission of the evidence, the trial court instructed the jury to consider the previous convictions for impeachment purposes only. *See, e.g., White v. State,* 21 S.W.3d 642, 647 (Tex.App.—Waco 2000, pet. ref'd). We presume the jury followed the court's instruction. *See id.* (citing *Gamez v. State,* 737 S.W.2d 315, 324 (Tex.Crim.App.1987)).

The fourth and fifth *Theus* factors, the importance of the defendant's testimony and the importance of the credibility issue, are related. *See Theus,* 845 S.W.2d at 881. As the importance of a defendant's credibility escalates, so does the need to allow the State an opportunity to impeach his credibility. *See id.* Appellant's testimony and his credibility were important because the defense asserted that contact with an-

other car rather than appellant's intoxication caused the accident. The defense presented an alleged eyewitness who testified another car was involved in the accident. The defense also called a second witness who allegedly informed another that he was aware a second car was involved but later testified he had not seen the accident. Therefore, appellant's credibility was an issue in the defense of his case at the guilt/innocence phase. I would conclude that the fourth and fifth *Theus* factors weigh in favor of admission.

Four of the five factors clearly weigh in favor of admission of the prior convictions. With regard to the fifth factor, the similarity between the past crimes and the instant offense, I would find the offenses sufficiently similar because each involves the use of intoxicating substances. However, even if this factor were to be construed to weigh against admission of the prior offenses, the court gave a limiting instruction on the "similarity" factor which arguably weighs against admission. Therefore, I would conclude the trial court did not abuse its discretion when it allowed the State to impeach appellant with his three prior convictions. I would overrule appellant's first point of error.

Accordingly, I dissent to the majority's decision that the trial court abused its discretion in allowing the State to introduce evidence of the convictions. I concur with the remainder of the Court's opinion.

I would affirm the judgment of the trial court.

Chief Justice VALDEZ and Justice HINOJOSA join in this Dissenting and Concurring Opinion.