NO. 07-11-00137-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JULY 16, 2012

DAVID ANDREW SCHMIDT, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 251ST DISTRICT COURT OF RANDALL COUNTY;

NO. 21,870-C; HONORABLE ANA ESTEVEZ, JUDGE

Before HANCOCK and PIRTLE, JJ. and BOYD, S.J.[1]

**OPINION**

Appellant, David Andrew Schmidt, was convicted of the offense of theft of property of the value of $1,500 or more but less than $20,000.[2] Punishment was enhanced by the allegation and proof of prior felony convictions on two State Jail felonies.[3] Appellant was sentenced to serve ten years confinement in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ) and a fine of $5,000.

---

[1] John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

[2] See TEX. PENAL CODE ANN. § 31.03(e)(4)(A) (West Supp. 2011).

[3] See id. § 12.425(a) (West Supp. 2011).

Appellant appeals, contending that the trial court committed reversible error by 1) allowing the State to introduce evidence of appellant's prior criminal record for impeachment purposes during the guilt-innocence phase of the trial and 2) denying appellant's motion for continuance during the trial. We will affirm.

Factual and Procedural Background

In the fall of 2009, a theft occurred at the offices of the Texas Department of Transportation (TxDot) in Amarillo, Texas. Several laptop computers were stolen. The serial numbers of the missing computers were forwarded to the national and state criminal information centers. Subsequently, on September 10, 2010, a report of a suspicious person with possible burglar tools in his possession was made to the Amarillo Police Department (APD). Officer Justin Graham made contact with appellant regarding this report. In the process of investigating the original report, Graham discovered a laptop computer in appellant's car. The serial number of the laptop was a match to one of the computers taken from TxDot. During Graham's interview with appellant, appellant advised that his mother had purchased the laptop for him and that he had possession of the laptop for over a year. Some of this interview was captured on a DVD recording, State's exhibit 25 (S-25), that was played for the jury. The DVD stopped before the entire interview was recorded. The statement to Graham that appellant's mother had purchased the laptop for him was not on the DVD, rather this information was presented to the jury as part of Graham's testimony.

After appellant's arrest, he was interviewed in the Randall County Jail by Sergeant Pat Williams, an investigator with the Randall County Sheriff's Office.

2

Williams initially warned appellant of his <u>Miranda</u> rights.[4]  During the recorded interview, appellant first asserted that he purchased the laptop several months ago from a friend, whose name he could not give.  Moments later, appellant told Williams that he and his mom bought the laptop together.  Within a few seconds, appellant told Williams that his mother bought the laptop for him.  This DVD, State's exhibit 26 (S-26), was also played for the jury.

After the State had rested its case in chief, appellant's trial attorney called two witnesses.  The first witness was Pat King.  King is the woman to whom appellant refers to as his mother or grandmother, even though she is not related to appellant.  Appellant lived in King's home at the time of his arrest.  King testified that appellant told her he purchased the laptop from a person named Logan.  Also testifying for appellant was Bridget Martin.  Martin testified that appellant told her he purchased the laptop from Logan Daniels.  She further stated that, sometime after appellant had been arrested in September of 2010, she was with appellant when they encountered Logan Daniels.  At this time, according to Martin, appellant told Daniels that he wanted a copy of the receipt for the purchase of the laptop.  After hearing this request, according to Martin, Daniels became upset and threw something at appellant, striking him in the head.  After Martin had testified on direct and cross-examination, the trial court recessed for the evening.  The following morning, Martin failed to reappear to conclude her testimony.  The trial court issued a writ of attachment for her, but the writ was not served in time to bring Martin back to court to continue her testimony.  After waiting all morning, and after

---

[4] <u>See</u> <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S.Ct 1602, 16 L.Ed.2d 694 (1966).

the issuance of the writ of attachment, the trial court reconvened without Martin having appeared. The jury was brought back, and the trial continued. Appellant rested his case, and the State proceeded with rebuttal testimony.

The State's rebuttal testimony consisted of Sergeant Byron Towndrow of the APD who testified concerning his knowledge of appellant's various convictions for felony offenses or offenses involving theft or moral turpitude. At the conclusion of the State's rebuttal testimony, the trial court prepared a "Court's Charge" for the jury. Neither party voiced any objections to the charge. The jury deliberated and found appellant guilty. After receiving evidence on the issue of punishment, the jury sentenced appellant to ten years confinement in the ID-TDCJ and a fine of $5,000.

Appellant gave notice of appeal and has presented this Court with two issues on appeal. First, appellant contends that the trial court erred when it allowed the State to produce evidence regarding appellant's prior convictions during the guilt-innocence portion of the trial. Second, appellant contends that the trial court erred in denying appellant's motion for continuance. For the reasons set forth below, we overrule each of appellant's issues and affirm the judgment of the trial court.

Admission of Evidence of Appellant's Criminal
Record During Guilt-Innocence Phase

Standard of Review

By his first issue, appellant contends that when the trial court allowed the State to introduce testimony about appellant's criminal record during the guilt-innocence phase of the trial, it committed reversible error. Inasmuch as the issue relates to the admission

of evidence at trial, we will review the trial court's actions under an abuse of discretion standard. See Martinez v. State, 327 S.W.3d 727, 736 (Tex.Crim.App. 2010). Included within this abuse of discretion standard is the trial court's decision whether the probative value of said evidence is substantially outweighed by the danger of unfair prejudice. See id. Finally, "a trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement." Id.

Analysis

Appellant contends that when the State placed the statements made by appellant to Officer Graham and to Sergeant Williams before the jury, the State was in effect sponsoring this testimony and, therefore, to allow the State to impeach appellant's credibility later in the trial is to allow the State to improperly bootstrap itself into this position. To support this proposition, appellant cites the Court to Shivers v. State, 374 S.W.2d 672, 673 (Tex.Crim.App. 1964). Shivers does not, however, support the appellant's contention. In Shivers, the State called the witness to testify about an out-court-statement the appellant had made to him, with the knowledge that the witness had made contradictory statements at the time of the offense. Id. at 672. This was the vice at which the Court of Criminal Appeals aimed its opinion. Id. at 673. Such is not the fact pattern presented in our case. Here, it was the appellant who put the testimony on before the jury that was subject to impeachment. Appellant also cites the Court to Enriquez v. State, 56 S.W.3d 596, 601 (Tex.App.—Corpus Christi 2001, pet. ref'd), for the same proposition. Again, the case does not support appellant's theory. In Enriquez, the testimony at issue was that of the investigating officer. Id. The officer

5

testified on direct about going back to an impound lot to take more pictures of the appellant's vehicle. Id. at 599-600. On cross-examination, the officer was asked why he wanted to take more pictures, and his answer led to testimony about statements the appellant had made to the officer while in the hospital. Id. The State then took the position that because these statements were admitted, the State was allowed to impeach the appellant with prior drug convictions. Id. at 600. However, the Corpus Christi court concluded that admission of the prior convictions was error because the statements were not hearsay; they were not admitted for the truth of the matters asserted. Id. at 601. This is not the fact pattern presented in this case, and the holding in Enriquez does not support the position taken by appellant.

Appellant seems also to suggest that the State somehow vouched for the credibility of appellant by putting the statements of appellant contained in S-25 and S-26 before the jury. However, the State of Texas abandoned the "voucher" rule regarding impeachment of witnesses with the adoption of Rule 607 of the Texas Rules of Evidence.[5] See Hughes v. State, 4 S.W.3d 1, 5 (Tex.Crim.App. 1999). However, the admonition remains that a party may not call a witness to testify for the primary purpose of impeaching that witness with evidence that would not otherwise be admissible. See Montoya v. State, 65 S.W.3d 111, 114 (Tex.App—Amarillo 2000, no pet.).

Appellant further contends that the evidence placed before the jury by appellant's calling of King and Martin was simply testimony consistent with that produced by the

---

[5] Further reference to the Texas Rules of Evidence will be reference to "Rule ___."

6

State when they offered S-25 and S-26. According to appellant, this means that the State cannot impeach this evidence. To support this proposition, appellant cites the Court to Pelham v. State, 664 S.W.2d 382, 384 (Tex.App.—Amarillo 1983, pet. ref'd). Pelham stands for the proposition that a statement that is not offered for the truth of the matter asserted in not hearsay, therefore, is not subject to impeachment. Id. Under appellant's theory, this is applicable to the case before the Court because the original statements introduced before the jury in the State's two exhibits were admissions by appellant and, therefore, not hearsay under Rule 801. See Rule 801.[6] While this would be true if the State were trying to impeach only the statements of appellant as shown in S-25 and S-26, such is not what transpired in the trial court.

After the State had rested its case, appellant called witnesses King and Martin. Both offered testimony about what appellant had told them regarding the purchase of the laptop in question. In each instance, the witness testified beyond what was already in evidence regarding appellant's explanation of how he acquired the laptop. In the exhibits played for the jury, appellant is heard saying he bought the laptop from a friend; however, he was unable to identify who the friend was. In King's and Martin's testimony, the friend was identified by name as Logan Daniels. Further, each said that appellant asked Daniels to provide him with a receipt for the laptop. During Martin's testimony, she said that, as a result of appellant's bumping into Daniels after appellant's

---

[6] Rule 801 provides in pertinent part that "[a] statement is not hearsay if . . . [t]he statement is offered against a party and is . . . the party's own statement in either an individual or representative capacity." Rule 801(e)(2)(A).

7

arrest and requesting a receipt from Daniels, Daniels assaulted appellant by throwing something at appellant and striking him in the head.

The record is clear that the testimony of King and Martin was hearsay, that is, they were statements of appellant made out of court that were offered for the truth of the matters asserted therein: that appellant had purchased the laptop from Logan Daniels. See Rule 801(d). It is also apparent that the testimony went beyond that which was heard from appellant in the exhibits offered during the State's case in chief. Accordingly, the State was authorized under the Rules of Evidence to impeach appellant's hearsay testimony. See Rule 806.

The State impeached the hearsay statements of appellant through the use of appellant's prior convictions in a form of questions limited to knowledge of appellant's convictions. Specifically, the State called Sergeant Byron Towndrow of the APD and asked if he was aware that appellant had several prior felony convictions. Towndrow affirmed his knowledge of this fact, and Towndrow was next asked if he was aware that those prior convictions included convictions for theft. Again, Towndrow affirmed this information. Immediately, the trial court gave the following limiting instruction to the jury:

> Ladies and gentlemen, you are instructed that any evidence regarding any prior convictions cannot be considered by you against the [appellant] as any evidence of guilt in this case. This is being admitted before you for the purpose of aiding you, if it does aid you, in passing upon the credibility of the [appellant] as a declarant making out-of-court statements pertaining to this case, and to aid you, if it does aid you, in deciding upon the weight

8

you will give to him as such a declarant, and you will not consider the same for any other purpose.[7]

Thereafter, both the State and the appellant rested their respective cases before the jury.

The final contention of appellant is that the impeachment allowed by the trial court was such that the probative value of the testimony was substantially outweighed by its prejudicial effect. See Rule 609(a). Again, appellant cites the Court to Enriquez in support of his proposition. However, Enriquez does not support appellant's contention. In Enriquez, the Corpus Christi court ruled that the trial court committed error in allowing the impeachment questions because the testimony at issue was not hearsay. See Enriquez, 56 S.W.3d at 601. The portion of the opinion quoted by appellant was contained in the court's analysis under the harm standard of Texas Rules of Appellate Procedure 44.2(b). Id. at 602. Thus, it does not properly analyze the standard for reviewing the probative value of the testimony at issue being substantially outweighed by the prejudicial effect. The proper analysis for this proposition is set forth in Theus v. State, 845 S.W.2d 874, 880-882 (Tex.Crim.App. 1992).

Initially, we note that as a reviewing court, we grant accord the trial court "wide discretion" regarding its decision to admit such impeachment evidence. Id. at 881. We will reverse a decision of a trial court to allow such impeachment evidence only when the trial court's decision lies outside the zone of reasonable disagreement. See Martinez, 327 S.W.3d at 736.

---

[7] The trial court gave a similar limiting instruction in paragraph 10 of the Charge of the Court to the jury on the issue of guilt or innocence.

9

Prior to admitting the impeachment evidence, the trial court held a hearing regarding the State's intentions to offer the evidence at issue. At that hearing, the State expressed the intention to impeach appellant's credibility with the following convictions:

1) two state jail felony convictions for theft from 1997;

2) felony conviction for possession of a controlled substance from 1999;

3) state jail felony conviction for theft from 2001;

4) state jail felony conviction for theft from 2002

5) two state jail felony convictions for burglary of a building from 2004;

6) felony conviction for an accident involving injury or death from 2006;

7) felony conviction for theft, enhanced, from 2006.

The trial court was also made aware of other misdemeanor convictions involving theft or moral turpitude. After hearing the proposed impeachment evidence, the trial court ruled that the State could ask its impeachment witness if the witness was aware that appellant had several felony convictions and that some were for the offense of theft. The State was ordered to ask the questions to illicit a "Yes" or "No" answer and to offer no details of the convictions. Lastly, the trial court gave the limiting instruction regarding the use of the testimony by the jury, as previously indicated.

Theus set forth five factors to consider in weighing the probative value of the impeachment evidence. Theus, 845 S.W.2d at 880. The five factors are 1) the

10

impeachment value of the prior crime, 2) the temporal proximity of the past crime relative to the charged offense and the witness's subsequent history, 3) the similarity between the past crime and the offense being prosecuted, 4) the importance of the defendant's testimony, and 5) the importance of the credibility issue.  Id.

Crimes of moral turpitude and deception have a higher impeachment value than those of crimes involving violence.  Id. at 881.  The record shows that, with one exception, all of appellant's prior convictions involve crimes of moral turpitude or theft.  This supports the admission of the impeaching testimony.

The second factor is the temporal proximity of the prior convictions.  Rule 609(b) contains a ten-year limit on the impeachment evidence unless the facts of the impeachment testimony outweigh the prejudicial impact.  See Rule 609(b).  However, a number of courts have held that intervening subsequent convictions remove the taint of remoteness.  See Thomas v. State, 312 S.W.3d 732, 739 (Tex.App.—Houston [1st Dist.] 2009, pet. ref'd,) cert. denied, 131 S.Ct. 301, 178 L.Ed.2d 196, 2010 U.S.LEXIS 7241, 79 U.S.L.W. 3203 (2010); Myers v. State, No. 07-06-0424-CR, 2008 Tex. App. LEXIS 8191, at *4-6 (Tex.App.—Amarillo Oct. 28, 2008, no pet.) (mem. op., not designated for publication).  In the case before the Court, appellant's otherwise remote convictions are followed by additional convictions that show a lack of reformation and, thus, remove the taint of remoteness.  See Thomas, 312 S.W.3d at 739.  These facts weigh in favor of admission under the Theus analysis.

The third Theus factor, the similarity between the previous convictions and the offense for which appellant was tried, weighs against admission.  The prior convictions

11

were, in many instances, for the same type of offense, theft. Thus, this factor weighs against admission. See Theus, 845 S.W.2d at 881.

The fourth and fifth Theus factors are intertwined, the fourth being the importance of the appellant's testimony and the fifth being the importance of the credibility issue. In the case before the Court, appellant's expanded discussion of how and from whom he acquired the laptop at issue was brought before the jury through the witnesses King and Martin. This was the only testimony that the jury heard that offered anything more than the barest assertion by appellant that he had purchased the laptop from an unnamed friend. Accordingly, this was critical testimony. Likewise, appellant's credibility, through his witnesses' hearsay statements, was critical. Had the jury believed the hearsay statements of King and Martin, the likely outcome would have been acquittal of appellant because he had offered an explanation of his possession of the stolen laptop. As stated in Theus, "[a]s the importance of the [appellant]'s credibility escalates, so will the need to allow the State an opportunity to impeach the [appellant]'s credibility." Theus, 845 S.W.2d at 881 (citing United States v. Fountain, 642 F.2d 1083, 1092 (7th Cir.), cert. denied, 451 U.S. 993, 101 S.Ct. 2335, 68 L.Ed.2d 854 (1981)). Thus, the fourth and fifth factors weigh in favor of admission.

The review of the Theus factors, as a whole, supports the admission of the impeachment evidence. The trial court's decision was not beyond the zone of reasonable disagreement. See Martinez, 327 S.W.3d at 736. Therefore, such decision was not an abuse of discretion. See id. The above is especially true where, as in this

12

case, the trial court gave an immediate limiting instruction on the use that the jury could make of the contested evidence. Accordingly, appellant's first issue is overruled.

## Continuance

By appellant's second issue, appellant contends that the trial court erred in denying his motion for continuance during the trial of the case. The factual background is that appellant urged a motion for continuance before the trial commenced. The reasons stated were that one witness, Martin, had not been subpoenaed and that appellant was unhappy about his attorney's representation, specifically, about the attorney's explanation regarding the appropriate punishment range for appellant's charged offense. At the pretrial hearing where the matter of the continuance was discussed, the trial court informed appellant that it was going to secure the presence of the witness and, if the same could not be done, the trial court would grant a continuance at that time. The witness, Martin, was subsequently located and placed under subpoena and testified. As to the second reason urged for the continuance, the trial court overruled the request. According to the record before this Court, these requests were orally made at the pretrial hearing and the motions were not sworn to.

<u>Standard of Review and Applicable Law</u>

We review the granting or denial of a request for a continuance under an abuse of discretion standard. See <u>Wright v. State</u>, 28 S.W.3d 526, 532 (Tex.Crim.App. 2000). To establish an abuse of discretion, appellant must show that he was actually prejudiced by the denial of the continuance. <u>Id</u>.

13

A motion for continuance must be in writing. TEX. CODE CRIM. PROC. ANN. art. 29.03 (West 2006). Additionally, such a motion must be sworn to by someone having personal knowledge of the facts relied upon. Id. art. 29.08 (West 2006). Filing an unsworn oral motion for continuance results in nothing being preserved for appellate review. See Anderson v. State, 301 S.W.3d 276, 281 (Tex.Crim.App. 2009).

Analysis

The record reflects that the motion was orally made at the pretrial hearing and that it was not sworn to. Under these facts, nothing is preserved for appeal. See id. In appellant's argument of this issue, he appears to be making a due process argument. Appellant concludes his argument by stating that, because of the facts of the case, he was unable to get a fair trial. However, such was the same argument rejected by the Texas Court of Criminal Appeals in Anderson, and we see no reason to rule differently. Id. at 280-81. Accordingly, we overrule appellant's second issue.

Conclusion

Having overruled both of appellant's issues, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice

Publish.

14